No. 8.—WILLIAM J. EVE, et al. Plaintiff in Error, *vs.* THE STATE OF GEORGIA, Defendant in Error.

[1.] The Courts are prohibited by the Tax Act of 1804, to entertain an affidavit of illegality to an execution proceeding against a defaulting Tax Collector and his sureties.

Illegality, in Richmond Superior Court. Decision by Judge HOLT, at October Term, 1856.

The bill of exceptions certified in this case, contains all the facts necessary to a full understanding of the decision, and is as follows:

STATE OF GEORGIA, }
RICHMOND COUNTY. }

Be it remembered, that at the October Term, 1856, of the Superior Court of said county, the Hon. William W. Holt, Judge of the Superior Courts of the middle district, presiding, the cause of the State of Georgia *vs.* Elias C. Tinsley, principal, and William R. Ruffin, William J. Eve and William H. Goodrich, sureties, came on to be heard. A *fieri facias*

addressed to all and singular the Sheriffs of the State afore-
said, signed by Peterson Thweatt, Comptroller General, had
been placed in the hands of the Sheriff of said county.

Said *fieri facias* recites the fact that Elias C. Tinsley, col-
lector of taxes for the county of Richmond, for the year
1854, is in arrears to the State eight thousand two hundred
and twenty-three dollars and seventy-six cents; whereupon
said *fieri facias* proceeded to command and require the said
Sheriffs, or either of them, of the goods and chattels, lands
and tenements of the said Elias C. Tinsley, collector as afore-
said, and William R. Ruffin, William J. Eve, and William
H. Goodrich, his securities, they cause to be levied and made
the sum of eight thousand two hundred and twenty-three
dollars and seventy-six cents, with interest thereon from the
first day of December, 1854, at the rate of twenty per centum
per annum.

The said Sheriff of Richmond county made a return of
said *fieri facias* on the third day of April, 1856, of *nulla bona*
as to Elias C. Tinsley, principal; on the 4th day of the same
month he levied the same on the lands of William J. Eve
and William H. Goodrich, and made returns to that effect
on the said *fieri facias*.    On the fifth day of the same month
he made a return thereon of *nulla bona* as to William R.
Ruffin.

Whereupon Juriah Harris, Executor of the last will and
testament of William R. Ruffin, deceased, William J. Eve,
and William H. Goodrich, gave the usual bond and security,
and made and delivered to said Sheriff an affidavit that said
execution was proceeding illegally against them upon the
following grounds:

1st. Because the same issued against William R. Ruffin
after his death, and not against Juriah Harris, his legal rep-
resentative.

2d. Because the bond is not good as a statutory bond, hav-
ing been executed on the thirtieth October, 1854, more than

Eve vs. the State of Georgia.

ten days after said Tinsley had been notified that his commission had arrived.

3d. Because the bond is not good as a common law bond, it having been taken *colore officii*, from one not in office and who was ineligible.

4th. Because the execution has issued for an amount larger than is due.

5th. Because the sureties are relieved by an agreement to extend time to the principal without their knowledge or consent, and to their detriment.

6th. Because the bond is for an illegal consideration or without consideration, requiring the performance of a duty by the principal, which he was prohibited by law from performing.

7th. Because the sureties are discharged, because no execution was issued against the principal and sureties, or either of them on first December, 1854, nor on the first January, 1855, nor on the first February, 1855, nor more than twelve months thereafter, nor was any notice given to the sureties or either of them during that period of the default of their principal.

8th. Because the principal was constitutionally ineligible, at the time he was elected, having at that time public money in his hands, as collector for 1853, unaccounted for.

9th. Because, as deponents are advised and believe, no certificate was issued with the commission, that said Tinsley had accounted for and paid into the treasury all sums for which he was accountable and liable, or if such certificate were ever issued, it was false in fact, said Tinsley being then, and still, in default for taxes of 1853, collected by him.

At the October Term, 1856, of said Court, the State of Georgia, appeared by her counsel, the Attorney General, and Ebenezer Starnes, Esquire, and excepting to the sufficiency of the grounds of illegality, moved to dismiss the same for the following reasons :

1st. That these defendants have no standing in this Court, and are not entitled to be heard upon the grounds of illegality, which have been interposed, and cannot have the judical interference which is sought: 1. Because such interference would be unconstitutional, as producing a conflict between two co-ordinate branches of our State government: 2. Because that, according to the principles of the common law, of force in our State, such judicial interference would be unlawful: 3. Because the same is prohibited by express provisions of our statute law.

2d. The first ground of illegality is insufficient, because: 1. By express legislative enactment such an execution shall not be stayed by reason of the death of the collector, or his securities: 2. Because the execution can proceed against the principal and other securities, notwithstanding the death of one of them: 3. The *fi. fa.* may be amended and the representative of the deceased security made a party.

3d. The second and third grounds are insufficient, because the bond in question is a statutory bond; whether or not it was executed more than ten days after the collector (Tinsley) had been notified that his commission had arrived; and if not, it is certainly good as a common law bond, because the defendants are estopped to deny it as their bond, and because the State, by its officers, must be considered as waiving these requirements.

4th. For similar reasons the sixth, eighth and ninth grounds may be considered as insufficient.

5th. And the seventh ground is insufficient, because mere forbearance or delay in prosecuting the claim on the part of the State's officers, did not release the securities, and because delay on the part of the State, in asserting its claims, does not bar its rights.

If these exceptions, and especially the first, should be over ruled, then the State joined issue with a protestation, on the fourth and gfth grounds.

After hearing argument the Court took time to consider,

and at a subsequent day in term time, the decision was announced, ordering the affidavit of illegality to be dismissed, upon the ground that under the Tax Act of 1804, there could be no judicial interference with a tax execution. The Court at the same time expressing serious doubt whether the remedy by affidavit of illegality would lie in any event. To which decision, ruling and order, the defendants then excepted and do now except, and say that the Court erred in dismissing said affidavit of illegality upon any or all the grounds taken in the motion to dismiss the same, or upon any other ground.

Wherefore, on this twenty-third day of December, eighteen hundred and fifty-six, being within twenty days after said decision was made, and within thirty days after the adjournment of said Court, and within the time prescribed by the Statute in such cases made and provided, the said defendants present this their bill of exceptions to your Honor, and pray, inasmuch as the matters herein contained do not appear of record, that the same may be signed and certified according to law.

H. H. CUMMING,  ⎫  Attorneys
C. J. JENKINS,  ⎬  for
MILLERS & JACKSON,  ⎭  Defendants.

MILLERS & JACKSON, AND C. J. JENKINS, for plaintiff in error.

E. STARNES and Attorney General, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The affidavit of illegality was made and put in by two of the tax collector's three sureties, and the executor of the third. The Court below dismissed the affidavit, holding that, under the Tax Act of 1804, there could be no judicial interference with a tax execution.

On this reason of the Court, two questions arise. First: Does the Tax Act of 1804 forbid the Courts to entertain such

Eve vs. The State of Georgia.

an affidavit of illegality as the one aforesaid? Secondly: If the act does, is the act in that respect constitutional?

The twenty-fourth section of the act is the part that imposes the prohibition on the Courts, if any part does. It is as follows : "In case any collector of taxes for any county in this State, shall not settle his accounts with the Treasurer, and pay in the amount of his collection by the time pointed out by this act, the Treasurer shall publish in one of the gazettes of this State, a notification, requiring all and singular the tax collectors, who may be in arrears, to come forward and settle their accounts, and pay the balance they may respectively owe into the treasury, within two months from the date of such notification, which shall be regularly published for six weeks successively, stating the sums due by such collectors, their names and securities, and in case of failure to make settlement and pay, in the moneys as aforesaid, the Treasurer is authorized and required to issue his execution against every collector so in default, directed to all and singular the Sheriffs of this State, and transmit it to the Sheriff of the county for which the collector is appointed, who is required to levy the same immediately, if there is any property of the defendant's, if not, to transmit the same to any other county where the defendants, or either of them, may have property, and the Sheriff of such other county is in like manner to levy the same, and no execution issued by the Treasurer in manner herein prescribed, shall be stayed by reason of the death of the said collector or his securities, as to the sum due or the legality of the execution. *Cobb's Dig.* 1052.

The execution in the present case was issued, not by the "Treasurer," but by the "Comptroller General." Still, that does not prevent the execution from being within this section, for this section is to be considered as having been amended by the third section of the Act of 1823, "further to define the duties of Comptroller General &c."—a section in these words : "The Comptroller General is hereby required to issue execu-

tions against all defaulting tax collectors, and their securities, (if any,) immediately after the tax which they were appointed to collect, shall have become due ; and in the event of the death of the collector, or either of them, or all of his securities, the execution shall issue against the survivors and the legal representatives of the deceased." *Cobb's Dig.* 1025.

This section considered as an amendment of the said twenty-fourth section of the Act of 1804, brings the execution, though issued by the Comptroller General, and not the Treasurer, within that twenty-fourth section.

I remark, that the Act of 1804, with all of its amendments, is still in force. This is an effect of the Tax Act of 1840. *Ib.* 1072.

Even before the twenty-fourth section of the Act of 1804, had been amended by the third section of the Act of 1823, it *might* well have been considered as extending, both to the case of the defaulting collector himself, and that of his sureties, for it speaks of *"defendants"* using the word in the plural, and also, it says that no execution shall be stayed by reason of the death of the collector or his *"securities;"* but since the section was so amended, it *must* be considered as having that extent.

The closing words of the said twenty-fourth section are these; "and no execution issued by the Treasurer in manner herein prescribed, shall be stayed by reason of the death of the said collector or his securities, as to the sum due on the legality of the execution."

Do these words prohibit the Courts from entertaining such an affidavit of illegality ; as that which was interposed in the present case?

We think that they do.

If the "death" of the collector or his sureties was not to be a sufficient reason to stay the execution "as to the sum due, or the legality of the execution," that is to say, on any question, "as to the sum due or the legality of the execution," it is difficult to conceive what was to be a sufficient reason.

Eve vs. The State of Georgia.

Is this not the sense of the words; that an execution, although it may be for too much, although it may be illegal, is yet not to be stayed in any case, not even the case in which the defendant's may be dead? We think it is.

And the opinion derives support from the following part of the twenty-first section of the Act of 1804; "and no replevin shall lie, or any judicial interference be had, in any levy or distress for taxes under this law, but that the party injured be left to his own proper remedy at law." Whatever reason can exist for non-interference with an execution proceeding against a defaulting tax-payer, must equally exist, for non-interference with an execution proceeding against a defaulting tax collector and his sureties.

And the opinion also derives support from this, that there has not been, so far as we know, any precedent of judicial interference, with the collection of an execution proceeding against a defaulting tax collector and his sureties.

The result is, that the Tax Act of 1804, *does* forbid the Courts to entertain affidavits of illegality in cases like the preset.

Is the act in this prohibition constitutional?

It was argued for the plaintiffs in error, that the act in this prohibition violates the first section of the first article of the Constitution of the State. That section is in these words: "The Legislative, Executive and Judiciary departments of the government shall be distinct, and each department shall be confided to a separate body of magistracy, and no person or collection of persons, being of one of those departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." *Cobb's Dig.* 1111.

And the following was the argument:

The Legislative department cannot exercise any power properly attached to the Judiciary department.

The power to entertain such an affidavit of illegality as the

present, is a power properly attached to the Judiciary department.

Therefore the Legislative department cannot prohibit the Judiciary department from entertaining such an affidavit of illegality as the present.

But this conclusion is plainly a *non sequitur*. What is the *sequitur* is, that the Legislative department cannot *itself exercise the power to entertain* such an affidavit of illegality as the affidavit of illegality aforesaid.

And it is manifest that a want of power in the Legislature to do that, is quite a different thing from a want of power in the Legislature to prohibit the Judiciary from doing it. The Legislature lacks power itself to pass any judgments except a few, yet it has ample power to prevent the Courts from passing many sorts of judgments. Perhaps it has power to prevent the Courts from passing any judgments whatever; for it has power to repeal those laws without which the Courts would not have the means of passing any judgments. And in the exercise of its power, the Legislature is constantly regulating, and, more or less, changing, the jurisdiction of the Courts.

The conclusion then drawn by the counsel, for the plaintiffs, is not the correct one, even if both of the premises were true.

But one of the premises is not true. It cannot be admitted, that the power to entertain an affidavit of illegality, interposed to stay the collection of an execution proceeding against a defaulting tax collector and his sureties, is a power *proper* to be attached to the Judiciary.

Such a power, I think, has never been given by any people to its Courts. Whether a claim for taxes is to be exacted or not, is a question everywhere, as far as I know, for the Executive, not for the Judiciary. If the Executive exacts the claim, and collects the money, and it turns out, that the claim was unfounded, the government sometimes itself gives redress, sometimes provides a mode by which redress may

be obtained through the Courts.   In every case, however, the money claimed as tax has *first* to be paid.

If this is not universally true, is it certainly generally true.

And if such a power had been one that the Courts ought to have had, it may be fairly insisted that governments would generally have given the power to the Courts.

But on general principles, is it not best that this power should be withheld from the Courts?   How could a government calculate with any certainty upon its revenues, if the collection of the taxes was subject to be arrested in every instance, in which a tax payer or a tax collector could make out, *prima facia*, a technical case for arresting such collection.   Far better is it, I think, to let the individual pay to the government what it demands of him, at the time of the demand, as he will be certain of getting it back with interest, after more or less of delay, if it was not due.

The conclusion of this Court is, that the part aforesaid of the Act of 1804, that prohibits the Courts from entertaining such an affidavit of illegality as the present, is constitutional.

And therefore, the general conclusion of this Court is, that the judgment of the Court below dismissing the affidavit of illegality, was right.                    Judgment affirmed.