No. 9. AMBROSE R. WRIGHT, plaintiff in error, *vs.* ROBERT FINDLEY, defendant in error.

[1.] Where the vendor of a warranted article, whether it be a specific chattel or not, sues for the price or value, it is competent to the purchaser, in *all cases*, to prove the breach of warranty, in reduction of the damages; and the sum to be recovered for the price of the article will be reduced by so much as the article is diminished in value, by the non compliance with the warranty.

Assumpsit., in Jefferson Superior Court.   Tried before Judge HOLT.   June Term, 1856.

This was an action of assumpsit brought by Findley, plaintiff below, against Wright, defendant, to recover the price of an engine and machinery sold to defendant, and for the value of work and materials furnished by plaintiff, in putting up said engine and machinery, under the following agreement:

"'The undersigned have this day agreed as follows, to wit; That Robert Findley will make, and have ready for shipment by the first day of March next, an engine of twelve horse power, with the usual outfit and appurtenances for a forty-eight inch circular saw, including same, and sundries, as follows: thirty feet carriage and machinery for same, also, cant hooks, rollers, revolving wedge, piles, wrench, punch, belting, bolts, cement, packing yarn, &c., as per Page's bill; for which A. R. Wright agrees to pay said Findley, twenty-one hundred dollars, as follows: ten hundred and fifty dollars when work is ready for shipment, and approved note for remainder, with interest from date of mill being put in operation. It is further understood, that no extra charge will be made for a smoke stack, delivered at No. 12, C. R. R. Said Wright agrees to pay for drayage and freight on all other parts. The whole of the machinery to be at the risk of said Findley until delivered to the agent of Central R. R., at Macon, in good order. No charge to be made by said Wright for any timber or lumber he may furnish for parts of the machinery, which he agrees to get as per bill given by said Findley. No bill of expense is here included by said Findley, for putting up engine or machinery at place of destination, but which to be under the supervision of said Findley. All of which work said Findley warrants to be of the very best materials and workmanship, and in all respects constructed in the most permanent and durable manner. Said Wright engages to furnish water within eight feet perpendicular depth of engine.

Macon, Nov. 29, 1851.

*Signed,*   ROBERT FINDLEY.

      A. R. WRIGHT."

The plaintiff annexed to this declaration, two bills of particulars:

One for engine and machinery, as per contract, $2,100 00
Cr. by cash, - - - - - - 1,055 00

Leaving balance of - - - - - $1,045 00
One for work done and materials furnished in
erecting said engine, &c., - - - - - $320 00

The defendant pleaded:

1st. The general issue.

2d. Failure of plaintiff to deliver the machinery and to perform his work in compliance with the contract.

3d. That defendant has been injured and damaged three thousand dollars by the defective and inferior quality of said engine and machinery.

Plaintiff examined by interrogatories, *William Thompson*, who deposed that he was a clerk in Findley's foundery; that he shipped by Central Railroad, from Macon to Station No. 12, one twelve-horse engine, and various articles of machinery, all marked "A. R. Wright." They were shipped about 26th March, 1852. That on 15th April, 1852, he shipped other articles; that on the 22d April, in the same year, he shipped to defendant other articles; that the said articles are the same charged in the bill of particulars; took railroad receipts for the articles shipped, which he then had in his possession. The machinery was in good condition when he shipped it, and the prices such as are usually charged; does not think they are too high.

*William L. Hogue*, examined by interrogatories, deposed: That he was a carpenter by trade; had charge of putting up the wood work of a mill for defendant, except the frame of the mill-house, which was built by defendant before he went to work; all the work done by him was done in a good, workmanlike manner. Considered the mill-house which defendant had built very inferior, the foundation was bad,

wet and soft; the frame too unsteady to run a circular saw; the foundation on which the timbers for the engine was placed was not suitable for such a purpose. Did not hear defendant say any thing about being satisfied or dissatisfied with the work, as he left the day the mill was started. He put up the feed works for the mill; they were well put up, but did not work well. Built the carriage; it worked well. All the machinery, except the feed works, worked very well when he left the mill.

*Cross examined.*—Says that he saw, in defendant's possession, a rough draft of a building, which he said had been given him by plaintiff, and the mill-house was in the form laid down in said draft. Does not know whether plaintiff gave size of the timbers or not about the building. Did not hear plaintiff say that the mill-house was sufficient; but did hear him say that it was a rough, bad job. He directed me pretty much how to put up the machinery, but I expressed my own judgment when it was necessary; millwright is in many cases a better judge than the machinist. As to the roughness of the machinery, don't know; saw machinist chipping about the mill; don't know whether machinery was rougher than usual. Does not know of any particular delay about machinery; might have been some, but not much, as the mill was started in twenty-six days from the time he went to work—means working days; commenced work 8th of April and left 6th of May, 1852. Plaintiff paid me for my services. Don't know how much time defendant lost in going to railroad; his wagon went once and returned empty.

*John S. Brown,* examined by commission, deposed, that he was present when the contract between plaintiff and defendant was made. Saw defendant some time after his mill had been in operation, and he spoke in high terms of his machinery, and rather boasted of the amount of sawing he could and had done. Was at defendant's mill and heard him say he had the frame for his mill built under his own supervision.

*Cross examined.*—Can't state all he heard defendant say in the conversation we had. He did complain of the feed gear, furnished him by plaintiff, but that he had promised to put him in new feed gear. Defendant spoke of having been delayed in putting up his mill by reason of plaintiff's delay in getting up the machinery according to his contract, and that he had sustained considerable loss. Defendant told me he had to take up some of his work. He declined to answer the first question in the third cross interrogatory.

*Luther R. Faught*, examined by commission, deposed that he was a machinist in Robert Findley's machine shop and Foundry; had examined the contract as requested; superintended the building of the engine and all the other machinery therein mentioned; the work was well done, and in accordance with the contract, and the prices charged the same as those usually charged for similar work. The material used was of the best kind. The prices charged for materials, hire, freight, &c., are such as were paid, or as are usually paid, and thinks them reasonable. The articles contained in the second bill of particulars are extra the contract.

*Cross examined.*—The engine was finished and ready for shipment sometime before it was sent; understood the woodwork was not ready, and knowing that the engine would be injured by exposure, did not send it till 6th of March, 1852. The feed gear was not defective, but was a new kind, which are considered superior to the old, but upon trial it did not succeed to our expectation, and was taken out and a new kind put in, free of expense to defendant. There was not a large portion of the machinery sent back; a pipe was sent back to be cut off a certain length, and a piece of the feed gear above named; if there was any thing else don't remember. Has seen three letters from defendant to plaintiff on the subject of the mill and machinery, and which he appends to his answers, marked "A." "B." and "C."

Plaintiff here closed.

*John Brown,* for defendant, testified that on the evening of 7th June, 1852, he went to work at defendant's steam mill in Jefferson County; met W. L. Hogue nine miles from the mill; Hogue told him he had just left the mill, and that in his opinion it could never be made to operate well.   Witness took charge of the mill 8th June, as general superintendent.   Mill run about ten days in a very imperfect manner, when the feed gear failed entirely and the mill had to be stopped until a new *"feed gear"* could be made.   Plaintiff sent down a new wheel for the old gear in about ten days, when the mill was again started and worked very well for a few days, when the feed gear again failed, and the log had to be fed to the saw by hand.   Mill ran in this imperfect way about six weeks, when the engine had to be taken down, owing to the defective manner in which it was put up. Mill was stopped about eight or ten days.   The pumps which supplied the boiler failed to furnish water, until a new pully was put on the shaft and gave more speed to the pumps. Mill started 8th May, 1852.   Remained at said mill till September following, or October; during this time there was a constant loss of time on account of the defective working of the feed gear.   If machinery had been good, could have cut four or five thousand feet per day; that amount ought to be cut by mills of that power; while witness remained, it did not cut over three thousand feet per day.   The house was a rough frame, but sufficiently steady for the successful working of a mill.   All circular saws shake a little.   Has seven years experience in running circular saw mills.   Was hired first by plaintiff to go down, he paid me part of the passage money on the railroads.   The fire front, or boiler front, in a few weeks gave way and broke into several pieces; worth of boiler front about eighty dollars; week after that time smoke stack fell down and was broken; lost several days in repairing and getting it up again.   Returned to defendant's mill in January, 1853, and remained there as superintendent till November following, during which time there was constant

Wright vs. Findley.

loss occasioned by the failure of the *"feed gear."* The foundation where the engine was set was sufficient, if the engine had been properly put up. The average loss while he was at defendant's mill was about fifteen hundred feet per day. The carriage that the log was placed on was too light and never did well. The boiler and furnace were placed in a very dangerous location, owing to which the mill on one occasion took fire. Plaintiff never sent a new feed gear up to the time he left in November, 1853. The machinist who set up the engine and machinery was employed by plaintiff, as was also W. L. Hogue, who put up the saw frame.

*Larkin Brassel* swore that he went to work at steam mill in the summer of 1852; was there about a month before L. J. Brown left, and after that had charge of the mill. The feed gear was very bad, failed entirely to feed up the log as it should have done, and was the cause of constant loss of time. Remained till December, 1852. Could have cut one-third more if the feed arrangement had been good; averaged about three thousand feet per day.

*Thomas F. Pearce,* sworn, says that plaintiff built and put up a steam mill for him and another in the Spring of 1852. W. L. Hogue and N. Green were the machinists who first put up the mill; could do nothing with it until plaintiff sent a man by the name of Deletter, the mill then performed better, but very badly, until witness sent to Savannah and hired competent machinists, and had the machinery newly set and altered. Defendant took Hogue and Deletter from witness' mill in his carriage.

Defendant closed.

Plaintiff's counsel requested the Court to charge the jury:

1st. That if they believed defendant accepted and worked the mill, without complaint as to the time the machinery was delivered, that he waived that part of the contract and cannot claim damages now.

2d. That if they believed defendant accepted and worked

the mill, without complaint or protest as to the sufficiency and workmanlike manner of the performance of the machinery, after he had used the same from four to eight months, that he had waived his right to object now on that account and claim a deduction for damages.

Defendant's counsel requested the Court to charge;

1st. That it is incumbent upon plaintiff to prove a compliance, on his part, with the terms of the contract, before he could call on defendant to perform his part, and this compliance must be full and complete, unless he can show that defendant subsequently consented to a modification of said contract.

2d. That "Faught's statement that the engine was finished and ready for shipment, and could have been shipped sooner, but it was understood that the wood work was not ready, and did'nt want engine exposed," &c., is too indefinite as to time and source of information, to be admissible in evidence of excuse for plaintiff's violation of contract, in failing to furnish engine at the time agreed on.

3d. That the payment of money from time to time by by defendant, does not preclude him from holding plaintiff to a strict compliance with his contract, and cannot be regarded as evidence of defendant's admission that plaintiff had fully complied therewith.

The Court charged as requested by plaintiff's counsel, and charged as requested by defendant's counsel on his first point, refused to charge as requested on the second point, and also as requested on the third, but charged that the payment by defendant of a part of the money was evidence of his acceptance of the contract, as performed by plaintiff, and a waiver of any right he might have to damages for the failure to comply with this part of the contract; and that the acceptance by defendant of the mill and machinery, and working and using the same, without an offer to return it,

was evidence of his acceptance of the same, and a waiver of a failure on plaintiff's part to comply with his contract.

To which charge and refusal to charge, defendant excepted.

The jury found for the plaintiff, one thousand and sixty seven dollars and ninety-eight cents, ($1067.98.)

Whereupon counsel for defendant excepted and assigns error:

1st. Because the Court erred in charging both of the points as requested by plaintiff's counsel.

2d. Because the Court erred in refusing to charge as requested by defendant.

Judge Holt, before signing and certifying the bill of exceptions, added: " That on the second ground in the assignment of errors, the opinion of the Court and its instruction to the jury are not fully and correctly stated. The charge on the first point was as requested by defendant's counsel, with the addition, that he might not only consent to a modification of the terms of the contract, but waive its exact and punctual performance by the plaintiff; of which they must determine from the evidence, and in this view they might consider the testimony of payments made from time to time by defendant. No objection was taken, at the time, to the admissibility of Faught's testimony, when read to the jury. The Court did refuse to decide whether it was too indefinite to serve the end for which it was offered, but referred that matter specially to the jury."

E. H. POTTLE for plaintiff in error.

JOHN SCHLEY for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Formerly it was held that the omission by the vendee to return goods, or to offer to do so, within a reasonable time,

or to complain of the breach of the warranty, will debar him from relying upon such breach of warranty, in an action for the price; even in cases where an early objection to a return of the goods might have given him a right to reduce the price.—(4 *Esp, Rep.* 95; *Basten vs. Butter,* 7 *East.* 479; 1 *Stark. Rep.* 257; *ib.* 477; 1 *C. & P.* 15; 2 *ib.* 514; 3 *ib.* 407; 1 *Camp. R.* 190.)

But Mr. Chitty, in his work on contracts, (*9th American edition,* 465,) says, that these cases may now be considered as overruled; and that where the vendor of a warranted article, whether it be a specific chattel or not, sues for the price or value, it is competent to the purchaser, in all cases, to prove the breach of the warranty in reduction of the damages; and the sum to be recovered for the price of the article, will be reduced by so much as the article is diminished in value by the noncompliance with the warranty. (*Mondell vs. Steel,* 8 *M. & W.* 858; *Allen vs. Cameron,* 1 *C. & M.,* 832; *Thornton vs. Place,* 1 *Moo. & Rob.* 218; *Cormack vs Gillis, cited* 7 *East.* 480; *King vs. Boston, id.* 481, *note; Germaine vs. Burton,* 3 *Stark. Rep.* 32; *and see particularly, Street vs. Blay,* 2 *B & Ad.* 456; *and see also* 2 *Smith's Leading Cases,* 16–17, *and the rule there stated.*)

And by the act of 1836, (*Cobb* 490,) it is made lawful for defendants to plead a *partial failure* of consideration to *any contract whatever,* any law to the contrary notwithstanding. This statute is exceedingly broad.

Tested by these rules, it is obvious that the Court was wrong in charging as requested by counsel for plaintiff, and in refusing to give the instructions asked by the defendant. The proof shows that the defendant complained of the sufficiency of the machinery from the first time he worked the mill; and it does not establish that it ever was perfected by the plaintiff. Nor is there any thing in the testimony to amount to a waiver on the part of Col. Wright of his legal rights of defence, when sued for the purchase money. .

It was obviously wrong to allow the witness Luther R.

Faught to testify to what he understood, &c. . His evidence was but hearsay, and should have been withdrawn from the consideration of the jury. Besides, if the plaintiff goes upon his contract and not upon the *indebitatus* count, what has he to do in showing that the defendant was not ready to receive the machinery? He must aver and prove a readiness to perform on his part, at the time stipulated.

Judgment reversed.