JOHN B. VANOVER, and others, plaintiffs in error, vs. JESSE M. DAVIS, et al., Justices of the Inferior Court, and others, defendants in error.

[1.] By the 12th section of the Act of 1856, the Inferior Court of Terrell county, were authorized to collect an extra tax for *county purposes*, of such per cent on the State tax, as to the said Court might seem necessary and proper. From the sale of town lots the Court House had been paid for, and likewise the jail, lacking $1,300, and there were some $4,000 of assets still in hand. Three Justices of the Court met in chambers, and after imposing 50 per cent. on the State tax for *county purposes*, and ten per cent for bridges, they assessed 200 per cent. on the State tax, for "Public Buildings."

*Held,* That this latter tax was without authority of law and void.

[2.] The provision in the 21st section of the Tax Act of 1804, prohibiting judicial interference with the levy and collection of taxes imposed by that Act, does not extend to county and corporation taxes, nor to taxes which are not authorized by that Act, and the general tax Acts amendatory thereof.

[3.] Where the tax payers of a county resist the collection of a tax, they may unite by bill, asking an injunction, and each will not be driven to his affidavit of illegality.

In Equity, in Terrell Superior Court.  Decision by Judge KIDDOO, at November adjourned Term, 1858.

This was a bill in equity, filed by John B. Vanover, Richard R. Roby, and others, (about ninety in number,) citizens and tax payers of Terrell county, against the Justices of the Inferior Court and the tax collector of said county, praying for an injunction to restrain the collection of a tax of *two hundred per cent.* ordered by the said Inferior Court to be assessed and levied " on the State tax, for public buildings." Said order was passed 14th August, 1858, by said Court in *chambers,* and signed by three of the Justices, these being all that were present.

The bill makes four grounds or points of objection to the said order :

1st. Because the same was not passed in Term time, and while said Justices were in session as a Court.

2d. Because said extraordinary tax was not authorized by law.

3d. Because all the public buildings of the county had been erected, and there was in the hands of the county Treasurer, funds more than sufficient to pay the amount remaining due on said buildings.

4th. Because there was no legal liabilities or debts outstanding against said county, which made it necessary to raise any sum of money by taxation.

The Court refused to grant the injunction as prayed, and counsel for complainants excepted.

LYON, IRWIN & BUTLER ; and HARPER, for plaintiffs in error.

McCAY & HAWKINS, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

[1.] Three of the Justices of the Inferior Court of Terrell county, met at chambers, August, 1858; and amongst other things, assessed a tax of two hundred per cent. on the State tax, for "Public Buildings." Its collection is resisted by a bill for an injunction, by a portion of the tax payers of Terrell county, and the only questions which we deem it necessary to decide are: 1st. Have the Justices the power to levy this tax? 2d. Has the Judiciary the power to interfere? And 3d. Is this a case for chancery?

By the 4th section of the Act of 1856, "the Justices of the Inferior Court of Terrell county, after they have been commissioned and qualified, shall have full power to select and locate a place for the Public Buildings in said county; and they, or a majority of them, are authorized and invested with full power to purchase a tract of land for the location of the county site; and to make such other arrangements and contracts, concerning the location of the Public Buildings, as they may think proper." (*Pamphlet,* 117.)

It is obvious that the Legislature did not suppose they were delegating any taxing power in this section. They foresaw that none would be needed, so far as the erection of Public Buildings were concerned. The Court House has been built and paid for. There is a balance only of $1,300 due for the jail; and there is a fund still in hand arising from the sale of town lots, or the value of lots retained, greatly more than enough to extinguish this debt.

The 12th section of the Act creating this new county, is that which contains the grant to levy an extra tax. It is in these words: "That the Inferior Court of said new county, shall have power to levy and collect an extra tax for county purposes, of such per cent. on the State tax, as to the said Court may seem necessary and proper." (*Ibid,* 119.)

But this grant does not cover Public Buildings. It is to raise funds for "county purposes," viz; To support the poor,

educate poor children, &c. &c. So it will be seen, that no direct authority has been conferred to impose a tax for Public Buildings, because none was needed. And yet, in addition to a tax of fifty per cent. for *county purposes*, and ten for bridges, the three members of the Court imposed this enormous tax of two hundred per cent. for "Public Buildings!" Not only without authority, but when not a cent was needed for that purpose.

No power should be more carefully guarded than the taxing power. It is threatening a civil revolution at the North. It is felt to be a crying evil in all of our towns and cities. It begins to be abused even in the counties. The cause of this abuse is well understood.

[2.] Has the Judiciary the right to interpose?

It is insisted that this power has been taken from the Courts, by the 21st section of the tax Act of 1804. It reads thus: "The tax imposed by this Act, shall be paid and collected in specie, bank bills of the United States, or of the different branches thereof, Governor's, President's and Speaker's warrants, agreeably to the orders of the present Legislature, and nothing else. *And no replevin shall lie, or any judicial interference be had, or any levy or distress for taxes,* UNDER THIS LAW, *but that the party injured be left to his own proper remedy in any Court of Law.*" *(Cobb, 1051.)* The judicial interference forbidden here is, for any levy or distress for taxes, under the Act of 1804, which is still in force, and the basis of all our general tax laws. By strict construction, the inhibition would only apply to the Act of 1804. It is but right, however, to extend it to all tax laws in favor of the State, and amendatory to the Act of 1804. But it never was meant to be incorporated in local tax laws in favor of counties, municipal corporations. And it would be great calamity if it did.

But apart from this plain and palpable view of the case, the prohibition applies only to taxes properly laid under the Act of 1804, and Acts amendatory thereof. But suppose, as

in this case, the Inferior Court assumes jurisdiction to levy a tax without authority of law to do so, or the ministerial officers of the State undertake to collect a tax on property, not only not taxable, but expressly exempted from taxation, would not the Courts arrest such an attempt, that not being a tax authorized by the Act of 1804, or any subsequent statute amendatory thereof? Most clearly.

We hope the profession and the public will apprehend this distinction, and that there will be less doubt and confusion upon this subject.

[3.] We approve the remedy resorted to in this case. It is not only more complete than any other, but the only one in our judgment which meets the exigencies of the case.

We preferred putting our decision upon these broad grounds, than upon others, which were technical and temporary.

Judgment reversed.

McDonald J. absent.