SAVANNAH, FLORIDA AND WESTERN RAILWAY vs. MORTON et al.

1. Where a bill was filed to enjoin the collection, by the tax collector and sheriff, of certain fi. fas. issued against a railroad for state and county taxes, on the ground that they were illegal and that the legal taxes had been returned and paid to the comptroller general, and upon the hearing of the application for injunction, it was shown that complainant's solicitors had written to the comp-

troller general for certified copies of the tax returns, and in reply had received a letter, dated two days before the hearing, in which the comptroller general stated that he had written to the tax collector to recall the *fi. fas.* sought to be enjoined and to stop any further proceeding, and to notify complainant's solicitors, on such a showing the hearing should have been postponed and time allowed to obtain the depositions of the comptroller and tax collector.

2. The act of 1874 is exhaustive as to the method of collecting state taxes on railroad property and of having the same returned with a view to the laying of taxes by the comptroller general. Hence the return should specify the several sorts of property, so that the kind appurtenant and necessary to the company for railroad purposes should bear only the rate of taxation fixed by the charter, and other property, not so appurtenant and necessary, should be taxed as that of all other persons; the entire state tax being levied by the comptroller general.

(*a.*) In the present case, the tax having been illegally imposed, and being illegally in process of collection by the tax collector of the county, an injunction should have been granted.

3. No machinery being provided for the return of the property of a railroad not necessary to its franchise, for the purpose of county taxation, and it being a question admitting of doubt whether the legislature intended for it to return and pay county tax at all, it would be inequitable to exact a double tax for *laches* in not making such returns and payment.

4. The object of the act of 1874 was to make more searching and sweeping provisions in respect to the taxation of railroads by the state, and to compel more full and specific returns; it was not the intention of that act to exempt such property of railroad companies from taxation as was previously subject thereto; such as town lots laid off for sale.

(*a.*) Even if a remedy has not been specifically provided for the county, if a railroad seeks to enjoin the collection of an excessive amount of tax, will not equity require that it pay a just and proper amount? *Quære.*

(*b.*) Further trouble is obviated by the act of 1882 (Acts 1882–3, p. 39).

January 8, 1884.

Equity. Injunction. Railroads. Taxes. Continuance. Counties. Before Judge MERSHON. Ware County. At Chambers. May 9, 1883.

Reported in the decision.

CHISOLM & ERWIN, for plaintiff in error.

J. C. McDONALD; HARRIS & SMITH, for defendant.

JACKSON, Chief Justice.

The Savannah, Florida and Western Railway Company filed its bill in Ware superior court March 5th, 1883, against Morton, tax collector, *et al.*, setting forth therein that the sheriff had levied an execution for state and county taxes for the year 1882, upon certain of its property in Ware county; that, under the acts of the legislature, said company was required to return all of its property for taxation to the comptroller general, and to pay taxes on the same to him; that returns as required by law were made by the company to the comptroller general, covering all of its property, including the property on which the so-called tax sought to be enjoined was assessed, for the year 1882; and that taxes due on all the company's property, including the property on which the so-called tax was assessed, were paid to the comptroller general; that the company, under its charter and the charter of the Atlantic and Gulf Railroad Company—the rights, privileges and immunities of which the Savannah, Florida and Western Railway Company possessed—was subject only to a limited taxation; that, although this limited taxation was subject to repeal by the legislature, it had never been repealed, so far as cities and counties were concerned; that the tax act of 1874 had made the property of railway companies subject to taxation by the state, and the state only; that the so-called taxes for which executions had been levied by the sheriff of Ware county were assessed without authority of law; that a cloud would be cast on the company's title to the property levied on if it was sold by the sheriff under the so called tax execution sought to be enjoined, and that irreparable injury would be done if a restraining order was not granted.

Injunction was prayed against said tax collector and

sheriff. Judge Mershon, of the Brunswick circuit, sanctioned the bill, and granted a restraining order, returnable at Waycross on the first Monday in April. The bill was verified by the affidavit of the vice president of the company.

The defendants filed an answer and plea, in which they set up that the executions sought to be enjoined were issued for state and county taxes due by the company on property in Ware county, real estate laid off by the company into town lots and held for sale by the company to employés of the company, and to others who would build upon the same, and was not property used by the company for purposes connected with the prime object of the incorporation, to-wit, the building and maintaining of a railroad.

The hearing of the motion for injunction was continued, and came on to be heard at Brunswick on May 9th, 1883. Complainant's solicitors, before the motion was heard, showed to Judge Mershon a letter received from the comptroller general of the state of Georgia on May 7th, stating that he, the comptroller general, had written to the tax collector of Ware county to recall the *fi. fa.* sought to be enjoined, and to stop any further proceedings in the case, and to notify Chisholm & Erwin accordingly. Complainant's solicitor stated in his place that this letter was in reply to one written by Chisholm & Erwin, complainant's solicitors, to the comptroller general, on May 3, 1883, for a certified copy of the complainant's tax returns for the year 1882, which he, complainant's solicitor, desired to use on the hearing of the motion for injunction. Complainant thereupon made a motion that Judge Mershon should grant an order refusing to hear the motion for injunction, on the ground that the comptroller general, by the action indicated in said letter, had obviated the necessity of hearing the motion for injunction. The judge refused to grant such an order. The complainant thereupon moved that the hearing of the motion be postponed until the tax collector of Ware county could be heard from, which motion

said judge refused to grant, and announced that he would proceed to hear the motion, or dismiss the bill.

The hearing of the motion for injunction then proceeded on bill and answer. After argument heard, said judge refused the motion for injunction. Within the time limited by law, the complainant tendered its bill of exceptions, assigning as error:

(1.) The refusal of Judge Mershon to grant an order refusing to hear the motion for injunction, on the ground that the comptroller general, by the action indicated in his said letter, had obviated the necessity of hearing motion for injunction.

(2.) In not granting a postponement of the hearing of the motion for injunction.

(3.) In refusing to grant the injunction as prayed in the bill.

1. We think it quite clear that the judge of the superior court, exercising chancery powers, should have postponed the hearing of the application for this injunction until the comptroller general's and the tax collector's depositions could have been procured by the complainant. If the state had been paid its tax legally due, and the comptroller general had received it from the company for this property, returned to that officer under the act of 1874, surely equity would not permit the subordinate officer, the tax collector, to force it out of the complainant again, and that in the shape of a double tax. From what appears of record, we think that this had been done, payment made to the state, the tax satisfied, and surely it should not be again imposed with the penalty of a double tax.

2. We think that the act of 1874 is exhaustive of the mode of collecting state taxes on railroad property and of having the same returned, with the view of laying by the comptroller general such a tax as should be laid on every kind of railroad property, and hence the return to the comptroller, as it was required by the company, should specify the several sorts of property, so that the kind ap-

purtenant and necessary to the company for railroad purposes should bear only the rate of taxation fixed by charter, and that not so appurtenant and necessary, but outside of that so used by the company, like the lots for sale under consideration here, such property of the corporation should be taxed as that of all other persons—all to be levied, so far as state taxes are concerned, by the comptroller general.

So that, even if the state tax had not been paid, the mode for its return and collection, under the act of 1874, had not been followed in this case; and therefore it was illegally imposed and was being illegally collected by the tax collector of the county. And therefore the injunction should have been granted as to the state's part of the tax, whether it had been returned or not to the comptroller general and paid to him. This will become more apparent when it is considered that the act of 1874 authorizes a treble tax to be imposed by the comptroller, on failure of the company to return any property.

3. It is clear, too, that the imposition of a double tax, so far as the county tax is concerned, was hardly equitable, inasmuch as the company might well hesitate how and where to make return of it for county tax. No machinery is provided for the return of such property for county taxes, by the act of 1874, and the company, such being the case, might well doubt whether the general assembly intended it to return and pay county tax at all, and certainly might be greatly at a loss to know how to make return of it. Therefore, to double tax the company as penalty for *laches* and violation of law in not making returns of the property for county tax, when no exact mode is pointed out, would be highly unjust and inequitable. So that we conclude that the injunction should have been granted on the whole case until a full hearing on all the issues could have been had.

4. Inasmuch, however, as the scope of the act of 1874 was confined to the matter of the return and collection of

state taxes, and the act does not embrace at all county taxes, is it therefore logical to conclude that county taxation was abolished by the act of 1874 in respect to property taxable by the counties before its passage, property wholly disconnected with the running of the roads and the exercise of their franchise? Was it not the intent of the act of 1874 to make more searching and sweeping provisions in respect to railroad taxation; to compel more specific returns; to force them to make particular return of all their property of all sorts, with full description of the character of every sort, so that the legal taxes might be laid on each kind; and can it be that a remedial statute, designed more rigidly to make these corporations return all their property, under the heavier penalty of treble instead of double tax, if not done, was intended to exempt the property always taxable by counties from all payment of county taxes? Moreover, when one goes into equity to procure its interposition to restrain the strong arm of the collecting officer of the county from pressing the collection of taxes, ought not such an one be required to do equity? And is it not equitable, if the tax be really and rightfully due to the county, if the act has not clearly exempted what was taxable by the county before, to require of a complainant seeking relief in equity to pay, not double tax, but a just and equitable tax on its property not part of or embraced within its franchise, but held as the property of all other persons is held, and rightfully liable to bear its just proportion of taxes of the county? And if the general assembly has not provided a remedy for this right of the county, will not equity provide it, when the complainant seeks its forum and asks its interposition and relief? Can it be true that town lots laid off for sale by a railroad company are exempt from county taxation or ever were exempt?

These are questions which will be before the court below on the hearing of this case, unless, as intimated, the company may itself be willing to adjust the county tax,

and the parties settle the dispute to their mutual satisfaction.

What we now decide is, that the injunction should have been granted until the hearing, that all these issues might then be regularly determined on the trial in open court, unless settled. That courts will interfere to stop illegal state taxation, see 59 *Ga.*, 805, and other cases following. That the interference by the courts with corporations, such as municipalities and counties, never was prohibited, see 27 *Ga.*, 357 and following cases.

How far this court has gone on the subject of municipal and county taxation of railroad property since the act of 1874, see *City of Albany vs. Savannah, Florida and Western Railroad Co.*, and *County of Houston vs. Central Railroad Co.*, this term.

It is well that the act of the legislature at its last session has settled all trouble for the future on these points, and hereafter these questions cease to be practical. Acts of 1882–3, p. 39.

Judgment reversed.