WEBB *v.* NEWSOM, sheriff.

1. Mandamus will not lie as a remedy to compel a sheriff to accept an affidavit of illegality filed to an execution issued by the comptroller-general against a tax-collector in default and his bondsmen, and levied on the property of one of the alleged bondsmen, who avers in his affidavit of illegality that he did not sign the tax-collector's bond, or authorize any one else to do so for him.
2. In such case, an equitable petition for injunction is an available remedy when filed by a bondsman.

JUNE 13, 1912.

Petition for mandamus. Before Judge Thomas. Brooks superior court. February 22, 1912.

*Shipp & Kline* and *L. L. Moore*, for plaintiff.

*Bennet, Long & Harrell* and *J. A. Wilkes*, for defendant.

HILL, J. The comptroller-general issued a fi. fa. against Gibson as the tax-collector of Brooks county, and the sureties on his bond, for the sum of $5,596.33. This execution was levied by the sheriff of Brooks county on the property of J. C. Webb, one of the alleged sureties on the collector's bond. Webb tendered an affidavit of illegality to the sheriff, wherein he alleged, among other things, that he did not sign the bond of the tax-collector, or authorize any one else to sign his name thereto. This affidavit was refused by the sheriff, who continued to advertise Webb's property for sale. Before the date of the sale of the property Webb presented a petition for mandamus to the judge of the superior court of the circuit in which the parties resided, praying that the sheriff be required to accept the illegality and file the same with the clerk of the superior court of Brooks county for trial. The judge to whom the petition was presented denied the writ as prayed for, on the sole ground that "illegality was not and is not the remedy of the plaintiff." To this judgment the plaintiff excepts and brings his case to this court by bill of exceptions for review.

1. The only question to be decided is whether the court erred in denying the writ of mandamus, and in holding that affidavit of illegality was not the proper remedy of the plaintiff. We think the court was correct in so holding. The earlier decisions of this court, based upon the tax act of 1804, were to the effect that an affidavit of illegality would not lie to an execution proceeding against a defaulting tax-collector and his sureties. And it was held that that part of the act of 1804 which prohibited an affidavit of illegality from being entertained by the courts was constitutional. *Eve* v. *State*, 21 *Ga.* 50, 59. See, also, *Perkins* v. *State*, 101 *Ga.* 291 (28 S. E. 840). By the act of 1823 the duty of issuing executions was changed from the treasurer to the comptroller-general. Cobb's Digest, 1025. The general rule was stated, in some of the earlier decisions, to be that there could be no judicial interference hindering or delaying the State in the collection of taxes due it. See *Decker* v. *McGowan*, 59 *Ga.* 805; *Brown* v. *Barnes*, 99 *Ga.* 4 (26 S. E. 86); *Bohler* v. *Schneider*, 49 Ga. 201. It was said, in some decisions, that the parties complaining must pay the taxes and pursue their remedy against the tax-collector individually, or the

taxpayer could pay to "the government what it demanded of him, at the time of the demand, as he will be certain of getting it back with interest, after more or less of delay." Just how is not stated. This last view was expressed in *Eve* v. *State, 21 Ga.* 59. See, also, *Cody* v. *Lennard, 45 Ga.* 85, 88; *Vanover* v. *Justices, 27 Ga.* 354, 357; *Young* v. *Manchester Mfg. Co., 33 Ga.* 622.

Prior to the act of 1910, following the decision of the Supreme Court of the United States in the cases of Central of Ga. Ry. Co. *v.* Wright, and Georgia Railroad &c. Co. *v.* Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134, 12 Ann. Cas. 463), the declared policy of the State was that there should be no replevin, or judicial interference, in any levy or distress for taxes due under the code, but the party injured was left "to his proper remedy in any court of law having jurisdiction thereof." Vol. 1, Civil Code (1895), § 903, and citations. In the cases just cited, on page 131, it was said: "Actions were begun by the plaintiffs in error, in the Superior Court of Fulton county, to enjoin the enforcement of executions in the hands of the sheriff, issued for taxes assessed by the comptroller-general on shares of the corporate stock of the Western Railway of Alabama, an Alabama corporation, which stock was alleged to be held and owned by the plaintiffs in error. The Superior Court refused to award an injunction. Upon writs of error the Supreme Court affirmed the judgments of the court below. 124 Georgia, 596, 630. The cases were remitted to the Superior Court of Fulton County, and that court rendered final decrees in favor of the defendants below, holding the tax executions to be lawful. The cases were again taken to the Supreme Court of Georgia and there affirmed. 125 Georgia, 589, 617." And, after an elaborate discussion of the tax laws of Georgia, the decision of this court holding that an injunction would not lie in those cases was reversed, on the ground that the tax system of this State did not afford due process of law under the 14th amendment of the constitution of the United States. Subsequently to the decision last cited, the legislature of this State amended the law relative to the method of assessing and collecting taxes. Acts 1910, p. 22. By the 4th section of that act it is provided: "Should the taxpayer desire to contest the taxability of said property under this section, he may do so by petition in equity in the superior court of the county where said property is assessed." Thus it

will be seen that the policy adopted by the legislature of the State as to the method of contesting the "taxability of said property" is by "petition in equity in the superior court of the county where the property is assessed."

No constitutional question was raised by the earlier decisions, which were rendered prior to the adoption of the 14th amendment to the constitution of the United States. Nor was the *kind* of remedy to be used decided, but merely the right to test the enforcement of the execution at all. The cases where this court held that illegality would not lie would probably have applied to any other remedy under the act of 1804. But the Supreme Court of the United States, in the Wright cases (supra), reversing the judgment of this court, held that a taxpayer must have a hearing and due process of law. And if this is true as to the taxpayer, how much more must it hold good as to a security on a tax-collector's bond, who avers that he never signed the bond at all, or authorized any one to sign it for him. In other words, that he is not even surety on the bond and that no liability attaches to him.

What, then, is the remedy in such a case; for, for every right there must be a remedy. Our Civil Code, §§ 1034-1041, provides that any railroad company desiring to resist the collection of the tax provided for in the preceding sections may resist its collection by filing an affidavit of illegality to the execution issued by the comptroller-general, which shall be returnable to the superior court of Fulton county, to be determined as other illegalities. This is the only case where provision is made for the return of illegality in such cases, so far as we know, except by municipal charter in some instances. Under the law, the comptroller-general issues the tax fi. fa., but no provision is made generally, or otherwise, for the return of an illegality to the comptroller-general, who has no authority to try it. The general rule is that an illegality must be returned to the court from which the fi. fa. issues. Civil Code, § 5307. But the comptroller-general is not a court, and no express authority has been conferred on him by the legislature to hear and determine such cases. If the sheriff of Brooks county had taken the illegality tendered him in this case, where would he have returned it? No place has been fixed by law for returning it, and he properly declined to take it. Mandamus, therefore, would not lie to compel the sheriff to take the affidavit of illegality.

2. What, then, is the remedy in a case like the present? Reasoning by analogy from former decisions of this court, and from the act of the legislature of 1910 (supra) in the case of the taxpayer, where petition to a court of equity and injunction is the declared remedy, we hold that injunction is a proper remedy in a case like the present. *City of Atlanta* v. *Jacobs*, 125 *Ga.* 528 (54 S. E. 534). In the older decisions holding that illegality would not lie, not merely the form of remedy was attacked, but the right to interfere at all. Neither did those holding that injunction is a remedy establish the fact that resort to a court of equity is the exclusive remedy, but they recognized that it is a remedy, and the legislature, following the decision in the Wright cases (supra), provided for an equitable proceeding by a taxpayer. It is true that none of the acts, or decisions, apply in terms to the bondsmen of tax-collectors, but only to taxpayers and tax-collectors; but analogizing from the act of 1910, we think the better view is that the remedy is by equitable petition and injunction. Instances may be conceived where the only adequate relief would be in a court of equity. This is an available remedy, and mandamus to compel the sheriff to take an affidavit of illegality will not lie.

*Judgment affirmed. All the Justices concur.*