BENNETT, superintendent, *v.* WHEATLEY, administratrix.

1　In cases of *doubt*, the doubt should be resolved in favor of the constitutional validity of legislation; and if a reasonable construction. can be placed upon a statute which will preserve its constitutionality, it is the duty of the courts to adopt such construction, and not declare the statute unconstitutional.

2. If sections, provisions, sentences, or phrases of a legislative act can be stricken therefrom without destroying the general legislative scheme, courts should strike them, if necessary to preserve the constitutionality of the act, and leave the remainder thereof intact.

3. Section 20 of article 7 of the act of the General Assembly of this State of August 16, 1919 (Georgia Laws 1919, p. 135), creating the department of banking, is not unconstitutional on the ground that stockholders are denied due process of law, because of the provision therein, to wit: " Provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment, but not the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be final and conclusive upon the stockholders."

4. Stockholders of insolvent banks (when such banks are taken over by the superintendent of banks for liquidation, and an assessment is made upon them by said official, on account of their statutory liability, to pay depositors) have, under said section, an ample remedy by affidavit of illegality to contest their liability for such assessment.

5. When an execution issues against a stockholder, and he files an affidavit of illegality thereto when levied, the same becomes mesne process, which may be returned to the superior or other proper court of the county of the residence of the stockholder for trial.

6. The chancellor erred in granting an injunction.

No. 3913.    December 7, 1922.

Injunction. Before Judge Littlejohn. Sumter superior court. November 28, 1921.

The Commercial City Bank of Americus was chartered in 1908. W. H. Crawford Wheatley was a large stockholder in the bank, and died on December 31, 1920, intestate. Helen H. Wheatley, his wife, was appointed administratrix on March 1, 1921. On January 3, 1921, the directors turned the assets of the bank over to T. R. Bennett, superintendent of banks for the State of Georgia, in compliance with the act of the legislature approved August 16, 1919 (Ga. L. 1919, p. 135, Park's Code Supp. 1922, §§ 2262 (a) et seq.), and the superintendent went into possession immediately. T. R. Bennett is a resident of Fulton county, Ga., and maintains the office of superintendent of banks in that county. In compliance with the provisions of the act of 1919 supra, Bennett, as superintendent of banks, made two assessments against the stockholders of the bank, first for 20 per cent., and the second for 80 per cent. The assessments were made against the " estate of W. H. Crawford Wheatley, deceased," and notices of the assessments were sent and were received by Mrs. Helen H. Wheatley, as administratrix of her husband's estate. The presiding judge appended a note stating that it was not disputed that Mrs. Helen H. Wheatley received the notice of the assessments as sent out by the superintendent; but

nothing was offered or admitted to show the character of the notice, or that she received it as administratrix. The assessments were not paid, and two fi. fas. were issued by T. R. Bennett, as superintendent of banks—one on April 24, 1921, for the 20 per cent. assessment amounting to $6,600; the other on September 26, 1921, to cover the 80 per cent. assessment for the sum of $26,400. Both of the fi. fas. were issued against "the estate of W. H. Crawford Wheatley," and the fi. fas. were directed to "all and singular the sheriffs of this State and their lawful deputies," directing that of the goods and chattels, lands and tenements of the "estate of Crawford Wheatley, of Americus, Sumter county, Ga., there be made the respective amounts heretofore set forth, with interest at the rate of 7 per cent.," etc.; and both of the fi. fas. were made returnable to the banking department of the State of Georgia, Atlanta, Ga., in the county of Fulton. Lucius Harvey, as sheriff of Sumter county, Ga., levied the fi. fas. on October 6, 1921, upon certain real estate located in Americus, Sumter county, Ga., as the property of the "estate of Crawford Wheatley, deceased," to satisfy the fi. fas.

Mrs. Helen H. Wheatley, as the administratrix of the estate of W. H. Crawford Wheatley, deceased, filed a petition in the superior court of Sumter county against T. R. Bennett, as superintendent of banks for the State of Georgia, alleging that he was a resident of Fulton county, Ga. In another note incorporated in the bill of exceptions the trial judge recites that—"The fact that T. R. Bennett was a resident of Fulton county, Ga., and the office of the superintendent of banks for Georgia was located in Fulton county, Ga., the court raised the question of jurisdiction of this court to hear the cause; whereupon it was stated by counsel for T. R. Bennett, superintendent of banks, that T. R. Bennett thought this the proper court to try the question made, and waived all question of jurisdiction and waived jurisdiction." Lucius Harvey, as sheriff of Sumter county, is a resident of Sumter county. The prayers of the petition were, that the two fi. fas. be declared null and void, and have no legal claim or demand against plaintiff or the property levied on; that T. R. Bennett, superintendent of banks, be enjoined and restrained from seeking to enforce the collection of the fi. fas., and, if they are declared to be null and void, that he be enjoined from issuing any fi. fas. against plaintiff until after she has been

administratrix for the space of 12 months; and that Lucius Harvey be enjoined from enforcing the two fi. fas. The case was heard upon the pleadings and evidence; and the court ordered that the superintendent and the sheriff "be and they are hereby restrained, pending further order of the court, as prayed in said petition, from proceeding to collect said executions by levy and sale of the property of the estate of W. H. Crawford Wheatley. In so far as the question is made as to the executions being issued against the 'estate of W. H. Crawford Wheatley,' were that the only question made, and upon which I place my judgment, I would provide that said executions may be amended." To this order the defendants excepted. Additional facts will appear in the opinion.

*Wallis & Fort, George M. Napier, attorney-general, Seward M. Smith, assistant attorney-general,* and *J. P. Knight,* for plaintiff in error. Briefs for persons interested, not parties, by *Hitch, Denmark & Lovett, Seabrook & Kennedy, Randolph & Parker,* and *R. P. McLarty.*

*W. A. Dodson* and *Shipp & Sheppard,* contra. Briefs for persons interested, not parties, by *Walter F. George, H. W. Johnson,* and *Quincey & Rice.*

HINES, J. (After stating the foregoing facts.)

1. Courts should be slow to declare legislative acts unconstitutional. In cases of doubt, the doubt should be resolved in favor of the constitutional validity of legislation. If a construction can be placed upon a statute which will save it from being declared unconstitutional, it is the duty of the courts to adopt such construction and thus save the act from collision with the organic law. If sections, provisions, sentences, or phrases can be stricken therefrom without destroying the general legislative scheme, courts should strike them and leave the remainder thereof intact. Section 20 of article 7 of the act of 1919, creating the Department of Banking (Park's Supp., § 2268 (t) ), is attacked as unconstitutional upon two grounds. One is that the language in this section, which prohibits the stockholders of insolvent banks from contesting "the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be final and conclusive upon the stockholders," denies to the stockholders due process of law, in that it prevents the stockholders from being heard upon the cor-

rectness of the amount of the assessment. If this portion of this section is unconstitutional on the ground alleged, should the entire section be declared unconstitutional? It is now the well-settled principle of constitutional construction in this State, that, unless the main purpose of the statute, or one of its provisions, is affected by the unconstitutionality of a particular part, the whole act or provision is not thereby defeated. If the statute is in part constitutional and valid, and in part unconstitutional and invalid, and the objectionable portion is so connected with the general scheme that, should it be stricken out, effect cannot be given to the legislative intent, the whole statute, section, or portion must fall; but where an act cannot be sustained as a whole, the courts will uphold it in part, when it is reasonably certain that to do so would correspond with the main intent and purpose which the legislature sought to accomplish by its enactment, if, after the unconstitutional part is stricken, there remains enough to accomplish that purpose. An act can be pro tanto unconstitutional. *McArthur* v. *State,* 69 *Ga.* 444; *Elliott* v. *State,* 91 *Ga.* 696 (17 S. E. 1004); *Mattox* v. *State,* 115 *Ga.* 212 (2) (41 S. E. 709); *Hawkins* v. *State,* 146 *Ga.* 134 (90 S. E. 968); *Cain* v. *Smith,* 117 *Ga.* 902 (44 S. E. 5); *Toney* v. *Macon,* 119 *Ga.* 83, 86 (46 S. E. 80); *Bass* v. *Lawrence,* 124 *Ga.* 75 (52 S. E. 296); *Glover* v. *State,* 126 *Ga.* 594 (55 S. E. 592); *Lee* v. *Tucker,* 130 *Ga.* 43 (60 S. E. 164); *Pearson* v. *Bass,* 132 *Ga.* 117 (63 S. E. 798); *Papworth* v. *State,* 103 *Ga.* 36 (31 S. E. 402); *Lippitt* v. *Albany,* 131 *Ga.* 629 (63 S. E. 33); *Carswell* v. *Wright,* 133 *Ga.* 714 (66 S. E. 905); *White* v. *Forsyth,* 138 *Ga.* 753 (8) (76 S. E. 58); *Sister Felicitas* v. *Hartridge,* 148 *Ga.* 832 (98 S. E. 538); *Rogers* v. *Citizens Bank,* 149 *Ga.* 568 (101 S. E. 674).

In applying the above principle, this court, in order to preserve the constitutionality of statutes, sections of statutes, and provisions thereof, has stricken sections, has eliminated portions of sections, and even portions of sentences, where this could be done without destroying the general scheme and purpose of the legislature in enacting laws. The general scheme and purpose of this section of this act was to furnish a speedy and inexpensive method of enforcing the statutory liability of the stockholders of insolvent banks, and to provide a remedy by which such stockholders could contest such statutory liability when assessments were levied by the

superintendent of banks for the purpose of enforcing such liability. The language of this section, which denies to stockholders the right to contest the necessity and amount of such assessments, can be stricken from this section without impairing the general legislative scheme and purpose therein sought to be effectuated. This being so, judicial surgeons should cut out this language, and not destroy the entire body of this section. But, as we shall undertake to show, this provision of this section is not unconstitutional; and for this reason it will not be necessary for this court to perform such operation upon this section in order to sustain its constitutionality.

2.   Is this provision of this section unconstitutional in that it denies due process of law to the stockholders of insolvent banks? · It is true that this provision of this section makes the assessments of the superintendent of banks upon such stockholders final and conclusive as to the necessity for and amount of such assessments; but, as we shall undertake to show, it provides a remedy by which the stockholders can contest their liability for such assessments. The fact that the stockholders cannot contest the correctness of the estimate made by the superintendent of banks, or its amount, and the fact that the necessity for and the amount of such assessment is made final and conclusive upon the stockholders, do not render this act unconstitutional. If this bank had been placed in the hands of a receiver by a court of equity, the court by order could have made an assessment on its shareholders, and the shareholders would have been bound by the order, although they were not parties to the suit in which the order was passed. Sanger v. Upton, 91 U. S. 56, 58 (23 L. ed. 220) ; Hawkins v. Glenn, 131 U. S. 319 (9 Sup. Ct. 739, 33 L. ed. 184) ; Great Western Tel. Co. v. Purdy, 162 U. S. 329 (16 Sup. Ct. 810, 40 L. ed. 986) ; Bernheimer v. Converse, 206 U. S. 516 (27 Sup. Ct. 755, 51 L. ed. 1163).

By a statute of Minnesota, provision was made for the administration of the assets of insolvent corporations, including the statutory liability of stockholders, and it was provided that in such suit the court should ascertain whether and to what extent it was necessary to resort to the stockholders' double liability, and, if resort to such liability was found necessary, to levy such assessment upon the stockholders according to their respective holdings as would be necessary to pay the debts of the corporation. This stat-

ute further provided that " Said order and the assessment thereby levied shall be conclusive upon and against all parties liable upon or on account of any stock or shares of said corporation, whether appearing or represented at said hearing or having notice thereof or not, as to all matters relating to the amount of and the propriety of and the necessity for the said assessment." Laws Minn. 1899, c. 272, § 5. The Supreme Court of Minnesota held that this statute was constitutional, although it made an assessment upon shares of stock, in order to meet the debts of the corporation, conclusive upon the shareholders of the corporation, as it did not deprive a stockholder of the right to show that he was not a stockholder, or was not the holder of so large amount of stock as was alleged, or that he had a claim against the corporation which he might set off against the assessment. Straw & Ellsworth Co. v. Kilbourne Boot & Shoe Co., 80 Minn. 125 (83 N. W. 36) ; London &c. Mortgage Co. v. St. Paul Park &c. Co., 84 Minn. 144 (86 N. W. 872).

The decisions in these cases, holding this statute constitutional, were upheld by the Supreme Court of the United States. Bernheimer v. Converse, supra; Converse v. Hamilton, 224 U. S. 243 (32 Sup. Ct. 415, 56 L. ed. 749, Ann. Cas. 1913D, 1292). In the last-cited case the Supreme Court of the United States said: " The constitutional validity of chapter 272 has been sustained by the Supreme Court of the State, as also by this court; and this because: (1) the statute is but a reasonable regulation of the mode and means of enforcing the double liability assumed by those who become stockholders in a Minnesota corporation; (2) while the order levying the assessment is made conclusive, as against all stockholders, of all matters relating to the amount and propriety of the assessment and the necessity therefor, one against whom it is sought to be enforced is not precluded from showing that he is not a stockholder, or is not the holder of as many shares as is alleged, or has a claim against the corporation which in law or equity he is entitled to set off against the assessment, or has any other defense personal to himself; and (3) while the order is made conclusive as against a stockholder, even although he may not have been a party to the suit in which it was made and may not have been notified that an assessment was contemplated, this is not a tenable objection, for the order is not in the nature of a

personal judgment against the stockholder, and as to him is amply sustained by the presence in that suit of the corporation, considering his relation to it and his contractual obligation in respect of its debts." This language is substantially repeated by the Supreme Court of the United States in Selig *v*. Hamilton, 234 U. S. 652, 660 (34 Sup. Ct. 926, 58 L. ed. 1518, Ann. Cas. 1917A, 104). In that case it was held that a foreign stockholder of a corporation was not concluded by an order of the State court in sequestration proceedings under the statute, and in which he was served only by publication without the State, as to any matter relating to his being a stockholder or as to other personal defense; but that while such stockholder not personally served may urge his personal defenses in a suit to recover the assessment made in sequestration proceedings of an insolvent Minnesota corporation, he may not reopen the amount of the assessment or the question of the necessity therefor. The court held, that, in a proper judicial proceeding to determine the amount of the indebtedness of an insolvent corporation, the individual stockholders were sufficiently represented by the presence of the corporation itself.

So, when the assets of an insolvent bank are sequestered by the State superintendent of banks, and under the statute which we are now considering he determines the necessity for and the amount of an assessment, the stockholders of the bank, as to these matters, are sufficiently represented by the presence of the corporation. If such bank takes no steps to resist the sequestration and assessment made in consequence thereof, its stockholders are sufficiently represented in these matters by the corporation, and will not be permitted to contest these matters where they were afforded a remedy for denying their personal liability for such assessment. If the court can pass an order making an assessment upon stockholders, in a case in which the corporation is a party, but to which the stockholders are not parties, which assessment is binding and conclusive upon the stockholders as to the necessity and amount of the assessment, and which does not deny to the stockholders due process of law when the stockholders can make the specific defenses named in the Minnesota statute, it is difficult to see why the legislature cannot clothe the bank superintendent with power to make a conclusive assessment upon stockholders, when they are given the right to deny their liability and a remedy by which

such right could be asserted. Of all instrumentalities under the sun, courts ought to afford due process; and if their action in making an ex parte assessment is binding upon the stockholder on account of his relation to the corporation, why cannot a special functionary, like the bank superintendent, make such assessment and bind the stockholders? It is unquestionably true that the court making the assessment by having acquired jurisdiction of the corporation in a sequestration suit can bind the stockholders by an order passed in such suit, notwithstanding the fact they may not be parties to such suit and have had no notice and no opportunity to be heard in resisting the assessment. Ueland v. Haugan, 70 Minn. 349 (73 N. W. 169); Hanson v. Davison, 73 Minn. 454, 462 (76 N. W. 254); Town of Hinckley v. Kettle River R. Co., 80 Minn. 32, 39 (82 N. W. 1088); Selig v. Hamilton, supra; Marin v. Augedahl, 247 U. S. 142 (38 Sup. Ct. 452, 62 L. ed. 1038); Irvine v. Baker, 225 Fed. 834; Northern Pac. Ry. Co. v. Crowell, 245 Fed. 668, 676.

The sequestration of an insolvent bank by the bank superintendent is a statutory receivership. Under the section which we are considering, he is authorized and empowered to determine whether an assessment on the stockholders is necessary, and, if necessary, what amount is required to discharge the claims of depositors. He is made a functionary to determine these questions; and having jurisdiction of the bank by his sequestration of it, his action should be, and is, binding upon stockholders as if done by a court proper in a sequestration suit. So the United States comptroller of the currency, under the national-bank act, has the power to decide when it is necessary to institute proceedings against stockholders to enforce their double liability as such, and to determine how much must be collected from the stockholders; and his determination of these questions is conclusive, and stockholders cannot question it in subsequent litigation to enforce such liability. Kennedy v. Gibson, 8 Wall. 498, 505 (19 L. ed. 476); Casey v. Galli, 94 U. S. 673 (24 L. ed. 168); Germania Nat. Bk. v. Case, 99 U. S. 628 (25 L. ed. 448); Bushnell v. Leland, 164 U. S. 684 (17 Sup. Ct. 209, 41 L. ed. 598); Christopher v. Norvell, 201 U. S. 216 (26 Sup. Ct. 502, 50 L. ed. 732, 5 Ann. Cas. 740); Aldrich v. Campbell, 97 Fed. 663 (38 C. C. A. 347);

Korbly *v*. Springfield Inst., 245 U. S. 330 (38 Sup. Ct. 88, 62 L. ed. 326) ; Irvine *v*. Baker, 225 Fed. 834, 838. This court has taken the same view of this question. *Simmons* v. *Freeman,* 146 *Ga.* 118 (90 S. E. 965). The comptroller of the currency is as much amendable to the due-process clause of the Federal constitution as our bank superintendent is. If the former can order an assessment which is binding upon the stockholders of a national bank, in a subsequent suit brought against them to recover such assessment, as to the necessity and the amount of the assessment, we fail to see any reason why the latter cannot make an assessment which would be binding upon stockholders in an insolvent State bank, as to its necessity and amount.

There is nothing to the contrary of what we hold, in the case of First National Bank *v*. Hawkins, 174 U. S. 364, 373 (19 Sup. Ct. 739, 43 L. ed. 1007). In that case the Concord First National Bank invested some of its funds in the stock of the Indianapolis National Bank. The latter bank failed. The comptroller of the currency levied an assessment upon all the stockholders of the Indianapolis National Bank. A receiver of the latter bank brought suit against the Concord First National Bank, to recover this assessment. The Supreme Court of the United States held that the latter bank had no power or authority in law to make this investment, and that, as a consequence of such lack of power, it was not liable for the assessment levied by the comptroller of the currency on the stockholders of the insolvent bank. On the last page of this opinion that court said: " The comptroller's act in ordering an assessment, while conclusive as to the necessity for making it, involves no judgment by him as to the judicial rights of parties to be affected." Here that court recognized the conclusiveness of the order of the comptroller levying an assessment, as to the necessity for making it; and that is the doctrine for which we are contending in this case.

Great stress has been put on the case of Moss *v*. Whitzel, 108 Fed. 579, to sustain the decision of the court below. In that case a judgment was rendered against the bank, by collusion between the plaintiff therein and the officers of the bank; and the court held that such judgment was not conclusive upon the shareholders. An assessment was made by the comptroller of the currency on the shareholders to pay off this collusive judgment. An action was

brought by the receiver of the bank against its shareholders, to collect this assessment in order to pay off this collusive judgment. The shareholders filed a bill in equity, to enjoin this suit, setting up that it was brought to collect an assessment in order to pay off this collusive judgment, which was based on no valid obligation of the bank. The assessment was not levied for any other purpose. In that case the district judge held that "the appropriate procedure would seem to be for them to file a bill in equity, to determine the validity of such judgment, and to enjoin the action against them, giving bond for the payment of the judgment therein in case the injunction should be dissolved after hearing." Again, the judge said: "The Supreme Court has not held that a stockholder, when sued by the receiver, is precluded from defending on the ground that he is not a stockholder, or that he owes nothing as such stockholder, or that there is in fact no debt or obligation of the bank existing at the time of the suit against the stockholder. If this defense is not permitted to the stockholder when called upon to pay an assessment based upon such judgment not conclusive against him, when, where, and how is he to find relief from the unjust exaction demanded of him? He has not hitherto had his day in court. He had no hearing before the comptroller prior to the assessment. The statute makes no provision for such hearing before the comptroller. The comptroller acts upon reports laid before him by the receiver respecting the liabilities of the bank and its assets. On this ex parte showing he decides as to the necessity and the amount of the assessment. This action of his is not reviewable." Clearly the decision in that case recognizes the doctrine for which we are contending in this case. It is only authority for the proposition, that, where an assessment had been levied for the sole purpose of paying a debt which was not in fact due by the bank, a stockholder could, by injunction, enjoin the receiver from proceeding to collect the assessment, on the ground that the stockholder was in no way liable under the assessment. In that case the stockholder was undertaking to set up a lack of liability in toto for such assessment. If there were no valid debts of the bank involved in this case, and its directors were attempting collusively with the creditors to fasten a liability upon the stockholders, the case cited would be an authority for the proposition that the stockholders could by a bill in equity enjoin the collection

of such assessment. That is a very different case from the one at bar, in which no denial of liability is made by the plaintiff, but in which she simply seeks to enjoin the execution issued by the bank superintendent, on the ground that this section of this statute is unconstitutional and void.

3. It is urged that this section of this act is likewise unconstitutional, because it gives to stockholders no remedy whatever for contesting their liability for the assessment made by the bank superintendent. The pertinent portion of this section is this: " The superintendent of banks shall issue an execution against such stockholders for the amount of such assessment, which shall be enforced in like manner as executions issued by the superior courts of this State upon judgments regularly rendered by said courts; provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment." By the very words of this provision, " any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment." But it is insisted that, as this section does not provide that the execution must be returned to any court or to the county where the stockholder resides, or that the affidavit of illegality must be returned to the latter county, the remedy so provided is wholly ineffectual and worthless. *Webb* v. *Newsom,* 138 *Ga.* 342 (75 S. E. 106), is relied on as an authority sustaining this position. That case does not sustain this contention. An execution was issued by the comptroller-general against the tax-collector of Brooks County and the sureties on his bond, under section 1187 of the Civil Code. The execution was levied on the property of one of the sureties on the tax-collector's bond, who tendered to the sheriff an affidavit of illegality, wherein he alleged, among other things, that he did not sign the bond of the tax-collector or authorize any one else to sign his name thereto. The sheriff declined to accept the surety's affidavit of illegality; and the latter applied for a mandamus to compel him to do so. The court below held that illegality was not the remedy of the surety. He thereupon excepted to the judgment of the court below, and brought the case to this court, assigning error upon this specific judgment of the trial court that an affidavit of illegality was not his remedy. So the only point raised for de-

cision by this court was whether an affidavit of illegality was the proper remedy of a surety who set up that he did not sign the bond of the tax-collector, or authorize any one else to sign it for him. This court properly held that the trial court's decision was correct. This was so because there was no provision of law for the filing of an affidavit of illegality by the tax-collector or his surety, to resist an execution issued under section 1187 of the Civil Code of 1910; and this court has held that, for that reason, this section was unconstitutional. *Gaulden* v. *Wright,* 140 *Ga.* 800 (79 S. E. 1125). Clearly anything else which was stated or decided in *Webb* v. *Newsom* was obiter; and for this reason that case is not an authority for the ruling made in the instant case.

What is the proper construction of that portion of section 20, article 7, of the act creating the department of banking, which we have quoted above? It declares that "the superintendent of banks shall issue an execution against such stockholder for the amount of such assessment, which shall be enforced in like manner as executions issued by the superior courts of this State upon judgments regularly rendered by said courts." This provision is plain. Executions issued by the superintendent of banks against stockholders in insolvent banks shall be enforced in the same manner as executions which are issued upon judgments obtained in the superior courts of this State. This means that they shall be levied by the same officers, that the property of the defendants in execution so levied upon shall be advertised for sale in the same manner, and that the sales of such property shall be conducted in the same manner as sales of property levied upon under superior-court executions. Provision is then made, "that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment." To what other executions is reference here made? Is the reference to executions other than superior-court executions, or to superior-court executions? There are two kinds of executions, those regularly issued upon judgments, and those which are summary. If the language "other executions" does not refer to superior-court executions regularly issued upon judgments rendered in the superior courts of this State, then the reference must be to summary executions. We will deal with some of the latter. The ordinaries of this State can issue summary executions against all

persons who have in their hands county moneys.' Civil Code (1910), § 523. If such executions shall issue for too much, or if the defendants deny on oath owing any part thereof, they may, by filing affidavit of illegality, according to the rules regulating other illegalities, cause an issue to be formed, which shall be tried by a special jury at the first term of the superior court thereafter. § 524. If the language " other executions " in the section which we are considering has reference to these and other summary executions, then the defendants in such executions have an ample remedy by affidavit of illegality. Such remedy by illegality under section 524 is valid and constitutional, and provides due process of law. *Hobbs* v. *Dougherty County,* 98 *Ga.* 574 (25 S. E. 579); *Roberts* v. *Dancer,* 144 *Ga.* 341 (87 S. E. 287). If this language " other executions " refers to superior-court executions, then the defendants therein have the same remedy by affidavit of illegality as defendants in such superior-court executions.

The execution provided for is only a mode of suit. *Heard* v. *Sibley,* 52 *Ga.* 310; *Stone* v. *Davidson,* 56 *Ga.* 182; *Wheatley* v. *Glover,* 125 *Ga.* 710, 722 (54 S. E. 626). As was ruled in *Heard* v. *Sibley:* "We think the kind of illegality referred to is the illegality authorized in personal-property mortgage executions, steamboat-lien executions, and all that class of cases of which we now have so many, where an execution is only a mode of commencing a suit, and the defendant . . has all the rights on the trial as an ordinary defendant." The legislature in this section specifically gives to stockholders the remedy by affidavit of illegality. It is not essential to the exercise of this remedy that the legislature shall prescribe the full method of procedure by which it could be asserted. It could leave the stockholder to look to the general law for this method of procedure.

The execution being only a mode of suit, as we have shown, when the affidavit of illegality is filed by the stockholder the suit should be returned to the proper court having jurisdiction to try the case. As all civil cases, except certain specified ones, shall be tried in the county where the defendant resides (Constitution, art. 6, sec. 16, par. 6; Civil Code (1910), § 6543), a suit commenced by such an execution and the filing of the affidavit of illegality should be returned to the county of the defendant's residence for trial in the proper court having jurisdiction. The superior court

of the county would always have jurisdiction. This court has held that a laborer can foreclose his lien either in the county of his employer's residence or where his property may be; but the process should be made returnable to the proper court of the county of the defendant's residence, if he resides in this State. *Tharpe* v. *Foster,* 52 *Ga.* 79. In that case this court said: "But the main question is, can the process issue in another county than that of the residence of the defendant? The act of March 16th, 1870, is silent on this point. We do not think there is any constitutional difficulty in the way of suing it out in another county. Section 12, article V. of the constitution, after reciting where equity cases, cases involving titles to land, etc., shall be tried, says, all other cases shall be tried in the county where the defendant resides. With this provision in all the constitutions, it has been held that an attachment can be issued by an officer of one county and returned to the courts of another. 36 *Ga.* 597; Code, §§ 3265, 3269, 3272. The act of 1869 (Code, § 4082) declares that 'any person who may have rent due may, by himself, his agent or attorney, make application to any justice of the peace, within the county where his debtor may reside, or where his property may be found, and obtain from such justice a distress warrant,' etc. If an issue be made, it is provided that it shall be ' returned to the court having cognizance thereof.' Would not this be a court of the county of defendant's residence? So in the cases of foreclosure of mortgages on personal property. The affidavit may be made before any officer of the State authorized to administer oaths, which shall be filed in the office of the clerk of the superior court of the county where the mortgagor resides or did reside at the date of the mortgage, if not a resident of the State, and such clerk shall issue the execution."

So a suit commenced by an execution issued under this law, when an affidavit of illegality is filed, although the statute is silent as to its return, must go to the court of the county of the defendant's residence for trial. If the legislature had simply provided that the stockholder should have the right, by petition in equity, to contest his liability for such an assessment, would any one contend that such remedy was abortive because the law did not provide to what court the equitable petition should be returned for trial? The stockholder's lawyer could be safely left to determine this from the law governing equitable procedure.

But whether the language "other executions" refers to summary or superior-court executions is immaterial and need not be decided, because in either case the intention of the legislature is manifest that affidavits of illegality filed to executions issued by the bank superintendent against stockholders in these banks shall be returned for trial to the superior or other proper courts of the counties wherein the defendants in such fi. fas. reside. This court should give effect to the plain intention of the legislature, although such intention is expressed in loose language. If this is done, then the remedy by affidavit of illegality is ample and complete; and this section of the act creating the department of banking is valid and constitutional. We should not resort to a strained construction of the language used by the legislature to strike down this law.

*Judgment reversed. All the Justices concur, except Hill and Gilbert, JJ., dissenting.*

HILL, J. The legislature in 1919 passed an act to regulate banking in the State of Georgia, and to create the Department of Banking, etc. Acts 1919, p. 160, article 7. Section 20 of the act is as follows: "Within ninety (90) days after the superintendent of banks has taken possession of the assets and business of any bank, as in this act authorized, he shall make a careful estimate of the value of the cash assets of said bank which can probably be converted into cash within one year after so taking possession of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors; and he shall immediately thereupon make an assessment upon the stockholders of said bank, sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full; provided that such assessment shall not exceed the liability of stockholders upon their said stock. Notice of such assessment shall be given by mail to each of the stockholders of said bank, and if any stockholder so notified shall refuse or neglect to pay any such assessment within thirty (30) days after the levy of such assessment and notice thereof, the superintendent of banks shall issue an execution against such stockholders for the amount of such assessment, which shall be enforced in like manner as executions issued by the superior courts of this State upon judgments regularly rendered by said courts; provided, however, that any stockholder shall have the

right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment, but not the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be final and conclusive upon the stockholders. If at any time prior to the final payment of all the indebtedness of such bank, it shall appear to the superintendent that the assessment made by him is insufficient in amount to pay such depositors in full, said superintendent may from time to time make other assessments not in excess of the liability of the stockholders upon their stock, which shall be enforced and collected in like manner. After all the indebtedness of such bank is paid in full, the remaining assets of such bank shall be applied first to reimbursing the stockholders who have paid such assessment or assessments, and thereafter pro rata to all the stockholders."

So much of the above section as provides "that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment, but not the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be final and conclusive upon the stockholders," is attacked as being violative of the due-process clauses of the State and Federal Constitutions (Const. Ga. art. 1, sec. 1, par. 3; Const. U. S. Amends. 5, 14) ; and that is the main question which is to be determined. In the instant case a fi. fa. was issued by the superintendent of banks against the " estate of Crawford Wheatley of Americus, Sumter County, Ga.," etc.; and the levying officer was " commanded to have the said several sums of money returned to the said banking department of Atlanta, Ga., Fulton County, on or by the 11th day of October, with this execution, to render to the said banking department the principal, interest, and costs as aforesaid; this execution being issued by and under the authority of the said act of the legislature approved August 16, 1919." The court below enjoined the enforcement of the fi. fa., and the superintendent of banks excepted to that order. It is insisted that a remedy is provided under the above section of the act of 1919, by affidavit of illegality, which affords due process of law to the stockholder, and that the remedy provided by that section is remedial and has for its purpose the

speedy and economical winding up of insolvent corporations, and that therefore the statute should be liberally construed, and, thus construing that portion of the act, the affidavit of illegality should be returned to the superior court of the county where the stockholder against whom the fi. fa. is issued resides. I cannot agree to this contention. In order to do so we would have to go far beyond any decision rendered by this court. Civil Code (1910) § 5307 declares that an affidavit of illegality should be returned to the court from which the execution issued. *Manning* v. *Phillips,* 65 *Ga.* 548. In order to give the statute the effect proposed, it is necessary to read into it language that is not there. In order to uphold this view we must hold not only that the fi. fa. must be returned to the county where the stockholder resides, but that the affidavit of illegality must be returned to the superior court of that county. Why not to the city court? There is nothing in the act itself to manifest such legislative intention; and while we are reluctant to declare a statute void, yet, as there is an utter absence of a provision in the statute under review providing for due process of law, I am constrained to the view that it does not provide due process as contemplated by the State and Federal constitutions.

In *Webb* v. *Newsom,* 138 *Ga.* 342, 345, 75 S. E. 106, 107, it was said: " Under the law, the comptroller-general issues the tax fi. fa., but no provision is made, generally or otherwise, for the return of an illegality to the comptroller-general, who has no authority to try it. The general rule is that an illegality must be returned to the court from which the fi. fa. issues. Civil Code, § 5307. But the comptroller-general is not a court, and no express authority has been conferred on him by the legislature to hear and determine such cases. If the sheriff of Brooks County had taken the illegality tendered him in this case, where would he have returned it? No place has been fixed by law for returning it, and he properly declined to take it. Mandamus, therefore, would not lie to compel the sheriff to take the affidavit of illegality." The reasoning in the *Webb* case is applicable here. And for the same reason it is manifest that an affidavit of illegality could not be returned to the superintendent of banks for trial, because he is not a court, and has no express authority from the legislature to try such an issue. It may be said that the clause, " as in cases of affidavits of illegality to other executions," is ample to provide due process of

law; but it will be observed that under the general law as quoted above, affidavits of illegality are returned to the court issuing those executions. But here no court has issued an execution, and no authority has been conferred on the superintendent of banks who did issue it to try such an issue, if it should be returned to him.

Certain decisions of the Supreme Court of the United States are cited (the cases known as "the Minnesota corporation cases," Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. ed. 1163; Selig v. Hamilton, 234 U. S. 652, 34 Sup. Ct. 926, 58 L. ed. 1518, Ann. Cas. 1917A, 104), in support of the view that the court, after a receiver has been appointed, may name the amount of the assessment against the stockholder, and that that amount is final and conclusive against him; that such assessment, without notice to the stockholder, is binding on him; and that such procedure is not violative of the due-process clause of the constitution of the United States. Those were cases where the stockholder owed for unpaid subscriptions on his stock, and was liable therefor; and the Minnesota act (Laws 1899, c. 272, § 3) provides, that, if it shall appear to the satisfaction of *the court* (italics ours) that the ordinary assets, or such amount as may be realized therefrom in a reasonable time, will not be sufficient to pay the expenses of such assignment or receivership and the indebtedness, and it is necessary to resort to the liability of stockholders, the court shall, by order, direct a levy and ratable assessment upon all parties liable as stockholders, or upon or on account of any stock or shares of such corporation, for such amount as the court in its discretion may deem proper, etc. Bernheimer v. Converse, supra. Under our act of 1919, on the other hand, the assessment is made and a fi. fa. is issued by the superintendent of banks without any hearing before the superintendent, without any suit in court against him to recover the assessment, and without the right to appear in any specified court and plead; and to which court no affidavit of illegality can be filed by express authority, if there is any illegal proceeding had in order to obtain the judgment and execution. In other words, the stockholder is given "no day in court" anywhere along the way under the act of 1919. The stockholder is utterly remediless so far as having an opportunity to be heard is concerned, under the State statute, by any specified court or tribunal authorized to hear and determine the stockholder's defense. The stockholder in

the instant case meets the State at the very threshhold, and says, " You have denied me my day in court, as I am entitled under the State and Federal constitutions, providing for due process." The statute does not provide for the return of the execution or the illegality to any particular court. The execution itself shows that it was returnable to the State banking department of Fulton county, Ga., where that department has its office; but that department is not created a court with power to receive, hear, and determine affidavits of illegality.

The Supreme Court of the United States has clearly and concisely brought out the manifest distinction between the line of cases known as " the Minnesota cases " and the present case, in Studebaker *v.* Perry, 184 U. S. 258, 268 (22 Sup. Ct. 463, 467, 46 L. ed. 528), where it declared that " This is a case where the power to assess belongs exclusively to the comptroller, and the power to enforce the assessment belongs to the courts." If the stockholder has his day in court before final judgment, he cannot complain of the want of due process. · But there is no provision for a hearing, in the act of 1919, except by affidavit of illegality; and that is inoperative, because no provision is made for a return of the affidavit to any court or other tribunal with authority to hear it. In Londoner *v.* City & County of Denver, 210 U. S. 373, 386 (28 Sup. Ct. 708, 714, 52 L. ed. 1103), it was said that " due process of law requires that, at some stage of the proceedings, before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of the hearing. . . But even here a hearing, in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument, however brief, and, if need be, by proof, however informal." And see *Lanham* v. *City of Rome,* 136 *Ga.* 398, 401, 71 S. E. 770, and cases cited. In 12 C. J. 1234, § 1009, the rule is thus stated: " That to condemn without a hearing is repugnant to the due-process clause of the fourteenth amendment needs nothing but statement. Every man is entitled to his day in court before his rights can be finally disposed of, and he cannot be divested of this right by any act of the legislature. Due process of law requires an orderly proceeding adapted to the nature of the case, in which proceeding the citizen has a right and an opportunity to be heard

and to defend, protect, and enforce his rights, by establishing any fact which, under the law, would be a protection to him or to his property. The object of notice, which is an essential element of due process, is to afford an opportunity to appear and be heard; and if a hearing is denied, the notice is ineffectual for any purpose."

It is insisted that the act of 1919 provides, in section 20, that " Notice . . shall be given by mail to each of the stockholders of said bank; and if any stockholder so notified shall refuse or neglect to pay any such assessment within thirty (30) days after . . such assessment and notice thereof, the superintendent of banks shall issue an execution against such stockholders for the amount of such assessment," etc. It is argued from this, that, when " notice " is thus given to the stockholder, he can come in and be heard, etc. But the reply is that there is no express provision in the statute itself for a hearing and trial before any named tribunal authorized to hear and determine such case, and it is not sufficient to say he *may* come in and be heard somewhere as a matter of grace. A hearing and trial must be accorded him as a matter of right before some court or tribunal authorized to hear and render judgment. *Savannah &c. Ry. Co.* v. *Savannah,* 96 *Ga.* 680 (23 S. E. 847) ; *Coleman* v. *Glenn,* 103 *Ga.* 458 (30 S. E. 297, 68 Am. St. R. 108) ; *City Council of Augusta* v. *King,* 115 *Ga.* 454 (41 S. E. 661) ; *Shippen Lumber Co.* v. *Elliott,* 134 *Ga.* 699 (3) (68 S. E. 509) ; *Mott* v. *Georgia State Board,* 148 *Ga.* 55 (95 S. E. 867).

The case of *Roberts* v. *Dancer,* 144 *Ga.* 341 (87 S. E. 287), is cited as authority, where this court held that " The statute authoring the summary issuance of an execution against a defaulting county treasurer by the ordinary or county commissioners, as the case may be, accords to the defendant the right to test his liability by affidavit of illegality, . . to the superior court of the county in which the fi. fa. issues, and is not unconstitutional as denying the defendant due process of law." This case is not in point, for the reason that Civil Code (1910) § 524, upon which that decision was based, expressly provides that " If such execution shall issue for too much, or if defendant denies on oath owing any part thereof, he may, by filing an affidavit of illegality, according to the rules governing other illegalities, cause an issue to be formed thereon, which shall be tried by a special jury at the first term of the su-

perior court thereafter." Due process is provided in such cases by section 524, but not by the act of 1919 in the present case. That section does not, as the act of 1919, expressly restrict the right of the defendant to raise the sole question as to "liability," and deny him the right to be heard as to the amount sought to be collected by execution. In *Shippen Lumber Co.* v. *Elliott,* supra, Mr. Justice Atkinson said: "The property owner is entitled to a hearing at some time before the assessment of the value of his property becomes finally binding, and a statute which attempts to authorize an assessment when the law does not afford him such a hearing will be declared unconstitutional. Central of Georgia R. Co. *v.* Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134) ; 8 Cyc. 1108. It will not suffice that he may have been afforded a hearing as a matter of grace; where he is entitled to a hearing, it is essential that the law should afford it to him as a matter of right. Security Trust Co. *v.* Lexington, 203 U. S. 323 (27 Sup. Ct. 87, 51 L. ed. 204) ; Due process of Law, by McGehee, c. 2, p. 82; Gray on Limitations of Taxing Power, § 1165, p. 579."

In Rees *v.* Watertown, 19 Wall. 107, 123 (22 L. ed. 72), it was said: "Whether, in fact, the individual has a defense to the debt, or by way of exemption, or is without defense, is not important. To assume that he has none, and therefore that he is entitled to no day in court, is to assume against him the very point he may wish to contest." In Moss *v.* Whitzel, 108 Fed. 579, 581, Phillips, District Judge, said: "The Supreme Court has not held that a stockholder, when sued by the receiver, is precluded from defending on the ground that he is not a stockholder, or that he owes nothing as such stockholder, or that there is in fact no debt or obligation of the bank existing at the time of the suit against the stockholder. If this defense is not permitted to the stockholder when called upon to pay an assessment based upon such judgment not conclusive against him, when, where, and how is he to find relief from the unjust exaction demanded of him? He has not hitherto had his day in court. He had no hearing before the comptroller prior to the assessment. The statute makes no provision for such hearing before the comptroller. The comptroller acts upon reports laid before him by the receiver respecting the liabilities of the bank and its assets. On this ex parte showing he decides as to the necessity and amount of the assessment. This action of his is

not reviewable. If the stockholder, when sued by the receiver, stands mute and suffers judgment to go by default, has he not had his day in court? Could he pay the judgment against him, and then have any standing anywhere in court to restrain the receiver from paying over the fund to the judgment creditor of the bank? It is said that the statute provides that if there is any surplus in the hands of the receiver after the debts of the insolvent bank are paid, it would go back, pro rata, to the stockholders who paid their assessment. This would afford very little consolation to the stockholder after the money collected from him had been paid over in satisfaction of the debt for which the stockholder is not in law and conscience bound. On the other hand, the receiver (so says the Supreme Court) ' represents both the creditors and the association.' Kennedy v. Gibson, 8 Wall. 506 (19 L. ed. 476). And therefore the judgment against him in this action would conclude him both as to the receiver and the creditor. Cromwell v. Sac. Co., 94 U. S. 351 (24 L. ed. 195). It seems to me that, to sustain the contention of the plaintiff the court must read into the statute not only that Congress intended that the comptroller should be the exclusive judge as to when an assessment on the shareholders should be made, and the amount thereof, but that he is also so far clothed with judicial functions as to conclude the shareholder from contesting the fact as to the validity or existence of any liability which the property of the shareholder is taxed to pay. This would carry the representative character of the receiver beyond what the Supreme Court has said — that he represents the creditors and the association — by holding that he also represents the shareholders, when called upon to pay the assessment. It seems to me that this would overturn the maxim that every man is entitled to his day in court, and would violate the fifth amendment to the Federal constitution, in depriving the shareholder of property ' without due process of law.' " It was held in the above-stated case that " The fact of an assessment by the comptroller upon the stockholders of a national bank does not conclude such stockholders as to the validity of the debts to pay which the assessment is made, and they are entitled to their day in court upon that question before being required to pay the assessment in an action against them by the receiver. Where the defendants in such an action assert the validity of a judgment against the bank which is the basis of the assess-

ment, the appropriate procedure would seem to be for them to file a bill in equity, to determine the validity of such judgment, and to enjoin the action against them, giving bond for the payment of the judgment therein in case the injunction should be dissolved after hearing."

The following are cases where the comptroller of the currency made the assessment against the stockholder, and the receiver filed a bill in equity, in the nature of a creditors' bill, against the stockholder, to enforce the extra liability imposed by R. S. U. S. § 5151. The defendants came into court, and were heard and made their defense. Christopher *v*. Norvell, 201 U. S. 216 (26 Sup. Ct. 502, 50 L. ed. 732, 5 Ann. Cas. 740) ; Wyman *v*. Wallace, 201 U. S. 230 (26 Sup. Ct. 495, 50 L. ed. 738). In the Christopher case the defense was that Mrs. Christopher was incapaciated, under the constitution of Florida and under the decisions of the Supreme Court of that State, from becoming the owner of the stock bequeathed to her by her father, etc. While the decision in that case was adverse to Mrs. Christopher, yet she had her day in court and was not denied due process. There is a wide difference between the provisions of the Federal bank act and the Georgia State bank act of 1919. Under the former the comptroller of the currency makes the final assessment, which is conclusive; but he does not render final judgment or issue execution as final process against the stockholder in order to collect the assessment, as is provided in the act of 1919. Under the Federal act the receiver of the national bank, under direction of the comptroller of the currency, files a bill in equity to collect the assessment so made. It may be in such cases that this provides due process of law to the stockholder. He is brought into court in the suit against him to collect the assessment made by the comptroller, and can there make legal defense, if he has any.

"The question as to the necessity of an assessment and of proceedings against a stockholder to enforce their personal liability, and whether the whole or a part, or, if only a part, how much, shall be collected, are referred to the judgment and discretion of the comptroller, and his determination is conclusive. Kennedy *v*. Gibson (1869), 8 Wall. 498 (19 L. ed. 476) ; Casey *v*. Galli (1876), 94 U. S. 673 (24 L. ed. 168) ; Germania Nat. Bank *v*. Case (1878), 99 U. S. 628 (25 L. ed. 448) ; Richmond *v*. Irons (1887), 121 U.

S. 27 (7 Sup. Ct. 788, 30 L. ed. 864) ; Bushnell v. Leland (1897), 164 U. S. 684 (17 Sup. Ct. 209, 41 L. ed. 598) ; Young v. Wempe (1891), 46 Fed. 354; Bailey v. Sawyer (1877), 4 Dill. 463, 2 Fed. Cas. 382, No. 744; Man v. Cheeseman (1874), 16 Fed. Cas. 568, No. 9002a; Stanton v. Wilkeson (1876), 8 Ben. 357, 22 Fed. Cas. 1074, No. 13299; Strong v. Southworth, 8 Ben. 331, 23 Fed. Cas. No. 13545; Columbia Nat. Bank v. Mathews (C. C. A. 9th Cir. 1898), 85 Fed. 934 (56 U. S. App. 636, 29 C. C. A. 491) ; Nead v. Wall (S. D. N. Y., 1895), 70 Fed. 806; Welles v. Stout (N. D. Iowa, 1889), 38 Fed. 67; Aldrich v. Yates (C. C. Ky., 1899), 95 Fed. 78; Bailey v. Tillinghast, 99 Fed. 801 (40 C. C. A. 93), affirming (S. D. Ohio, C. C. 1897) 86 Fed. 46; Brown v. Ellis (D. C. Vt. 1900), 103 Fed. 834; Deweese v. Smith (C. C. A. 8th Cir. 1901), 106 Fed. 438 (45 C. C. A. 408, 66 L. R. A. 971) ; O'Connor v. Witherby (1896), 111 Cal. 523 (44 Pac. 227) ; Simmons v. Freeman (1916), 146 Ga. 118 (90 S. E. 965). But the comptroller's act in ordering an assessment, while conclusive as to the necessity for making it, involves no judgment by him as to the judicial rights of the parties to be affected, or who are liable for the assessment. Concord First Nat. Bank v. Hawkins (1899), 174 U. S. 364 (19 Sup. Ct. 739, 43 L. ed. 1007), reversing Bailey v. Tillinghast (6th Cir. 1900), 99 Fed. 801 (40 C. C. A. 93), affirming (S. D. Ohio, 1897) 86 Fed. 46; Moss v. Whitzel (W. D. Mo., 1901), 108 Fed. 579." 6 Fed. Stat. Ann. 2d ed. 859, note 1.

Under the Georgia statute of 1919 there is no provision for hearing except by affidavit of illegality; and as no venue is fixed in any county or in any court for hearing and determining the issues that may be raised by the illegality, that provision of section 20 of the act of 1919 does not provide due process. Therefore the court below did not err in granting an injunction.

The act of 1919 provides that the superintendent of banks, after he has taken possession of the assets and business of any bank, shall make a careful estimate of the value of the assets of the bank which can probably be converted into cash within one year after taking possession of the assets and business of the bank, and of the amount of such cash assets which will be available to pay depositors; and he shall immediately thereupon make an assessment upon the stockholders of the bank, sufficient, when added to the cash assets so available for depositors, to pay the depositors in full, provided that

such assessment shall not exceed the liability of stockholders upon their stock. Notice of such assessment shall be given by mail to each of the stockholders of the bank; and if any stockholder so notified shall refuse or neglect. to pay any such assessment within 30 days after the levy of such assessment and notice thereof, the superintendent of banks shall issue an execution against such stockholders for the amount of such assessment, which shall be enforced in like manner as executions issued by the superior courts of this State upon judgments regularly rendered by said courts, "*provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment, but not the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be .final and conclusive upon the stockholders.*" (Italics ours.) It appears, therefore, that the only issue that can be made under the affidavit of illegality provided for is the liability of the stockholder for the assessment made against him, and that he is expressly denied the right to contest the correctness of the estimate made solely by the superintendent, or the amount of the assessment made by him; and it is expressly said in the act that the estimate and the amount of the assessment shall be final and conclusive upon the stockholder. The stockholder is therefore expressly denied the right of contesting the amount of the bank's assets or the amount of the indebtedness due depositors. The act provides a remedy by illegality to the stockholder; but the remedy is confined to the raising of only one issue, that is, the liability of the stockholder, and expressly declares that he shall not contest the estimate or the amount of the assessment. That is one remedy; and if the remedy so provided is not complete, and denies the stockholder all other defenses, then the remedy cannot be held to provide due process of law as to other legal defenses and that part of it denying the stockholder the right to contest the estimate made by the superintendent of banks or the amount of the assessment. The remedy sought to be provided is not complete. A part of the remedy cannot be held constitutional and a part unconstitutional.

In arriving at the above conclusion, and in placing this interpretation upon a portion of. section 20 of the act of 1919, I have looked diligently to find the intention of the General Assembly;

but nowhere do I find provision made for due process of law as contemplated by the State and Federal constitutions. Therefore I feel impelled, under the facts of this case and the provision of the State constitution which declares that " Legislative acts in violation of this constitution, or the constitution of the United States, are void, and the judiciary shall so declare them," to hold as above indicated. Article 1, sec. 4, par. 2, Civil Code (1910), § 6392. It is fundamental that one's property cannot be taken from him except by lawful judgment or " by the law of the land." What, therefore, is meant by the law of the land?' The argument of Mr. Webster in the famous Dartmouth College case (Dartmouth College v. Woodward, 4 Wheat. 518, 581, 582, 4 L. ed. 629) is appropriate on this point: " By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land. If this were so, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments, decrees, and forfeitures, in all possible forms, would be the law of the land. Such a strange construction would render constitutional provisions of the highest importance completely inoperative and void. It would tend directly to establish the union of all powers in the legislature. There would be no general permanent law for courts to administer, or for men to live under. The administration of justice would be an empty form, an idle ceremony. Judges would sit to execute legislative judgments and decrees; not to declare the law or to administer the justice of the country."

Having arrived at the conclusion that a portion of section 20 of the act of 1919, supra, is unconstitutional for the foregoing reasons, it follows that the trial judge did not err in granting the interlocutory injunction. I am authorized to say that Mr. Justice Gilbert concurs in this dissent.