BENNETT, superintendent of banks, *v.* SCHWARZ *et al.*

This case came before this court upon a writ of error from the superior court of Fulton county; and after argument had, the same being for decision by a full bench of six Justices, who are evenly divided in opinion, Russell, C. J., and Hill and Gilbert, JJ., being in favor of an affirmance and Beck, P. J., and Atkinson and Hines, JJ., being in favor of a reversal, the judgment of the court below stands affirmed by operation of law.

No. 3249.    February 20, 1923.

Injunction. Before Judge Pendleton. Fulton superior court. April 4, 1922.

Seabrook & Kennedy and Seward M. Smith, for plaintiff in error.

George W. Owens and H. W. Johnson, contra.

RUSSELL, C. J. The superintendent of banks made an assessment under the State banking act of 1919, against the stockholders of the American Bank & Trust Company, of 100 per cent. of the face value of their stock. Notice was given, that, if this assessment was not paid within thirty days, executions would be issued against the several stockholders for the amount of their respective assessments. The stockholders of the bank filed a petition to enjoin the superintendent of banks from issuing such executions, alleging that article 7 of section 20 of the act approved August 16, 1919, which purports to authorize the superintendent of banks to make a final assessment and to issue executions against bank stock-

holders, without notice and without a hearing, is void because in violation of the State and Federal constitutions. An ad interim injunction was granted, and the superintendent of banks excepted.

The provision of the act under which the superintendent of banks was proceeding, is as follows: "Within ninety (90) days after the superintendent of banks has taken possession of the assets and business.of any bank, as in this act authorized, he shall make a careful estimate of the value of the cash assets of said bank which can probably be converted into cash within one year after so taking possession of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors; and he shall immediately thereupon make an assessment upon the stockholders of said bank, sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full; provided that such assessment shall not exceed the liability of stockholders upon their said stock. Notice of such assessment shall be given by mail to each of the stockholders of said bank; and if any stockholder so notified shall refuse or neglect to pay any such assessment within thirty (30) days after the levy of such assessment and notice thereof, the superintendent of banks shall issue an execution against such stockholder for the amount of such assessment, which shall be enforced in like manner as executions issued by the superior courts of this State upon judgments regularly rendered by said courts; provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment, but not the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be final and conclusive upon the stockholders."

It will be observed that this statute makes no provision whatever for a notice prior to the estimate or assessment or hearing by the stockholder of the bank before the assessment is made against him; although when made it is final and conclusive upon such stockholder. It will be further noted that unless the assessment made is paid within thirty (30) days after notice, the superintendent of banks is authorized to issue an execution against the stockholder for the amount of the assessment, "which shall be enforced in like manner as executions issued by the superior courts of this State

upon judgments regularly rendered by said courts." At no stage of the proceeding by the superintendent of banks is the stockholder afforded an opportunity to object in any form or manner, nor is he permitted to present any evidence or offer any argument. The amount of the stockholder's liability is irretrievably and conclusively fixed by the superintendent of banks.

The issue presented in this case is practically identical with that presented to this court in *Bennett* v. *Wheatley*, 154 *Ga.* 591 (115 S. E. 83), in which the judgment of the lower court in granting an injunction restraining the banking commissioner from proceeding under the provisions of section 20 of article 7 of the act of 1919 was reversed. In that case Mr. Justice Hines presented the views of the majority of the court, and Mr. Justice Hill filed a dissenting opinion in which Mr. Justice Gilbert concurred. I have carefully read and considered the opinions of both the majority and minority, but am unable to alter my convictions that the provision of section 20 of article 7 of the act of 1919, in relation to the collection of assessments from stockholders is effectively a denial of due process of law to stockholders against whom executions may be issued by the commissioner of banks. I agree with the reasoning in the dissenting opinion of Mr. Justice Hill in the *Wheatley* case; and there is no question that his view of the case is amply supported by the authorities therein cited. I regret if the result of my non-adherence to the views of the majority in the *Wheatley* case should result in rendering less speedy the liquidation of insolvent banks, or should impose delay in winding up their affairs.

However, no matter what the result, it is in my opinion of prime importance that old, fundamental, essential personal rights be preserved; and among the most ancient rights possessed by English-speaking people is that of due process of law. To deprive any citizen of any right, however insignificant, without a hearing, or an opportunity to be fairly heard, is obnoxious to every principle of jurisprudence as well as to every innate sentiment of common justice. For my part, therefore, I am content to rest my decision upon the proposition that the provision in section 20 of article 7 of the act of 1919, with reference to contesting the execution issued by the bank commissioner by affidavit of illegality, totally fails to provide any such remedy to the stock-

holder against whom such execution has issued as that it may be called " due process " of law. If the proviso reading, " provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment," stopped there, it possibly might be said that the defendant in such execution had due process of law, even though in the estimate and assessment he had been precluded from having a hearing. But the law does not stop there. Following as a part of the same sentence immediately after the words we have quoted the section concludes as follows: " but not the correctness of the estimate made by such superintendent or the amount of such assessment, which estimate and the amount of such assessment shall be final and conclusive upon the stockholders." In other words, after the stockholder has been precluded from being present, and debarred from objecting or being heard as to the estimate of the bank's resources (which, of course, must be determined also by the estimated amount of its liabilities), and denied the privilege (I should say the right) of being heard as to the assessment, the stockholder is told that he has the right to contest his liability by affidavit of illegality, except such liability as is dependent upon the correctness of the estimate made by the superintendent, and providing also that he consents to be forced to admit that he is liable for his pro rata part of the assessment, which, of course, has been laid upon the stockholders proportionately or pro rata after the bank superintendent has arbitrarily fixed the value of the bank's resources, and determined for himself the just debts of the bank, as well as the solvency of its debtors. In other words, the only things that could really affect the liability of a stockholder, unless he was one who still owed an unpaid balance on his original subscription, are determined by one individual. The superintendent of banks is not a judge, as pointed out by authorities cited by Judge Hill, relating to the comptroller-general; and yet he is authorized to sit in a star chamber (or perhaps operate under authority delegated by him to assistants), and in many cases to fix absolutely and unchangedly the liability of a stockholder. To give a stockholder the right to present a defense of non-liability, and yet to withdraw by law what in ordinary cases would be all of the evidence by which he could establish non-liability, is to offer to such a citizen what to his eyes

may appear to be an apple of Hesperides, but what turns to ashes on his lips. I think that the decision in Central of Ga. Ry. Co. *v.* Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134, 12 Ann. Cas. 463), decides this case in ruling upon another point referred to by Judge Hill. But I shall not discuss that or other reasons that have been presented which lead to the conclusion that the provision in the banking act of 1919, with relation to the mode of collecting assessments from stockholders is unconstitutional. I think my view is supported by decisions of the Supreme Court of the United States which are cited by Judge Hill in the *Wheatley* case. I base my position upon the broad proposition that the provision of section 20 of article 7 of the act of 1919, to which I have referred, so manifestly and palpably denies to the stockholders of an insolvent bank due process of law,— the right to have a hearing, the right to have a day in court; and that, no matter what may be the consequences, it is the duty of the court to declare this provision unconstitutional. Civil Code (1910), § 6392. Adherence to these principles is not only sound law, but, in my opinion, is good policy. It is undeniable that one of the great needs of our State in its present depressed condition is an addition to our banking capital or an increase in any other lawful manner of the circulating medium. In my opinion there would be no new banks, and but small accessions to the banking capital of this State, when possible subscribers to bank stock know that if, through mismanagement or dishonesty for which they themselves are not to blame, a failure of the enterprise should result, they would be perhaps subject to a liability; and further, were aware that even if they should not be really liable, they would still be legally liable if the individual who at that time should be commissioner of banks was personally of the opinion that they should be made to pay.